## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

**ANITA S. LIMA and SUSAN WRUBLEWSKI,**  )
individually and on behalf of others similarly situated,  )
                                                           )
               **Plaintiffs,**  )
                                                             )
        **v.**  )   **Civil Action No. 18-12100-ADB**
                                                           )
**POST CONSUMER BRANDS, LLC,**  )
                                                             )
           **Defendant,**  )
_____)

## <u>FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND</u>

Plaintiffs Anita S. Lima and Susan Wrublewski (collectively, "Plaintiffs") bring suit on behalf of themselves and all persons similarly situated who purchased one or more varieties of a breakfast cereal known as "Honey Bunches of Oats," a consumer product manufactured and marketed by Defendant. By making false, deceptive, and misleading representations, and by omitting material information, Defendant's branding and packaging of these cereals convey that honey is the primary sweetener, or at the very least is a significant sweetener. In truth, however, the cereals are sweetened primarily with sugar, corn syrup, and other refined substances, and contain only miniscule amounts of honey. Plaintiffs and all members were harmed by paying more to purchase the cereals than they would have been willing to pay had their honey content not been misrepresented by Defendant.

## PARTIES

1. Plaintiff Anita S. Lima is an individual who resides in Medford, Middlesex County, Massachusetts.

2. Plaintiff Susan Wrublewski is an individual who resides in Framingham, Middlesex County, Massachusetts.

3. Defendant Post Consumer Brands, LLC is a Delaware limited liability company with a principal place of business at 20802 Kensington Boulevard, Lakeville, Minnesota 55044-8052.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from Defendant. None of the exceptions of 28 U.S.C. §1332(d) are applicable.

5. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the conduct complained of occurred in this district.

## STATEMENT OF FACTS

**A. The negative health effects of consuming excessive amounts of sugar are well-established.**

6. In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation." https://newsinhealth.nih.gov/2014/10/sweet-stuff.    The NIH noted

further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *Id.*

7.  There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity." http://www.chicagotribune.com/lifestyles/health/ct-sugar-addictive-20171218-story.html

8.  In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]." http://theconversation.com/yes-too-much-sugar-is-bad-for-our-health-heres-what-the-science-says-92030.

**B.  As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.**

9.  At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar as well as for "natural" products.

10. In August, 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years." https://www.preparedfoods.com/articles/118643-trends-in-sugar-reduction-and-natural-sweeteners.

11. As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims

prominently    featured    on    products    in    the    coming    year.    .   .”
https://www.foodinsiderjournal.com/formulation-solutions/less-more-sugar-reduction-
less-sodium-low-fodmaps-food-beverage.

12. Similarly, an article in the February 28, 2018, edition of “Food Business News” reported
that “[s]peakers addressing consumer trends at the International Sweetener Colloquium
in Orlando on February 13 said sugar avoidance was a macro trend ‘that is here to stay
and will only increase. ,. . “

13. The same article noted that “I.R.I. [Information Resources, Inc.] surveys show that 58%
of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar,
85% are doing so for health reasons and 58% for weight concerns.”

14. The same article reported that surveys showed that “[c]onsumers rated honey at 73%
‘better for you than sugar.”

15. And, in 2018, “Prepared Foods” magazine noted survey findings that: (i) “93% of
consumers consider honey to be a natural sweetener;” (ii) “58% of consumers with one
or more children look for honey on the product label;” (iii) “60% of consumers between
the ages of 18 and 34 look for honey on the product label; and (iv) about half of
consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt
primarily sweetened with honey.”   https://www.preparedfoods.com/articles/118643-
trends-in-sugar-reduction-and-natural-sweeteners

16. Referring to food products perceived as healthier, the Huffington Post reported that
“[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to
pay more for the added quality and benefits.”   https://www.huffingtonpost.com/brian-
kennell/healthy-food-trends-drive_b_8222388.html.

17. Honey is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.   In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well. Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

18. Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

19. Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

**C.  Defendant's false, deceptive and misleading branding and packaging of "Honey Bunches of Oats" cereals.**

20. One of Defendant's major line of breakfast products is "Honey Bunches of Oats" cereals (sometimes referred to herein as "the Products").  In 2017, "Honey Bunches of Oats" was the third largest selling pre-made breakfast cereal in the United States.

21.  "Honey Bunches of Oats" cereals are sold to the public in rectangular boxes containing 13 ounces or more of cereal and individual serving "to go" cups containing 2.25 ounces of cereal.

22. The front of each "Honey Bunches of Oats" product is identical:

  (a)  The package is dominated by a large yellow-orange circle simulating the sun with rays radiating outward.

  (b)  Emblazoned around the circumference of the circle are the words "HONEY BUNCHES

OF OATS," in the center of which is a large, wooden honey dipper covered with and dripping honey.

(c) Toward the bottom of the cereal boxes and cups is the outline of a bee trailing a broken line indicating flight.

23. An example of the front of an "Honey Bunches of Oats cereal box is shown here:



24. An example of the front of a "Honey Bunches of Oats" "to go" cup is shown here:



25. In addition, the top of each "to go" cup contains the same labeling and design:



26. Thus, the branding and packaging of the Products convey the clear message that honey is the primary sweetener or – at a minimum - that honey is a significant sweetener compared to sugar and other refined substances that are perceived by consumers to be unhealthy or less healthy.  Unfortunately for consumers, this message is simply untrue.

27. Sweeteners contained in "Honey Bunches of Oats" cereals are:

   (a) Sugar (often referred to as "white" or "regular" sugar), which is made from juice extracted from sugar beet and sugar cane plants that goes through multiple stages of processing and refinement;

   (b) Brown sugar, which is a combination of white sugar and molasses;

   (c) Corn syrup, which is a processed sugar product derived from corn starch;

   (d) Malted barley syrup, which is a processed sugar product produced by cooking sprouted barley malt;

   (e) Molasses, which in its most common form is the thick, brown syrup that results from processing sugar cane or sugar beets into sugar.

   (f) Honey, which is made by bees from the nectar of flowering plants.

28. According to Defendant's website, the "Honey Bunches of Oats" cereals, along with their ingredients (in descending order of predominance, with sweeteners highlighted) are:

   "Honey Bunches of Oats with Crispy Almonds"

   Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Almonds, Rice, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Wildflower Honey**, Caramel Color, Cinnamon, Natural And Artificial Flavor, Annatto Extract (Color), Bht Added To Packaging Material To Preserve Product Freshness.

"Honey Bunches of Oats with Banana Bunches and Almonds"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, Almonds, Rice, Canola Oil, **Corn Syrup**, Dried Bananas, Salt, **Barley Malt Extract, Molasses**, Cinnamon, **Honey**, Caramel Color, Natural Flavor, Bht Added To Preserve Freshness

"Honey Bunches of Oats, Crunchy Honey Roasted"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, Almonds, Rice, Canola Oil, **Corn Syrup**, Dried Bananas, Salt, **Barley Malt Extract, Molasses,** Cinnamon, **Honey**, Caramel Color, Natural Flavor, Bht Added To Preserve Freshness

"Honey Bunches of Oats with real Strawberries"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, **Brown Sugar**, Rice, Dried Strawberries, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup,** Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Honey**, Caramel Color, Natural Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats, Pecan and Maple Brown Sugar"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, Rice, Pecans, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Salt, **Molasses**, **Honey**, Caramel Color, **Barley Malt Extract**, Natural And Artificial Flavor

"Honey Bunches of Oats, Chocolate"

Corn, **Sugar,** Rice, Whole Grain Rolled Oats, **Brown Sugar,** Brown Rice Flour, Cocoa (Processed With Alkali), Canola Oil, **Corn Syrup,** Salt, Hydrogenated Vegetable Oil (Coconut And Palm Kernel Oils), **Honey**, Millet, Caramel Color, Natural And Artificial Flavor, Tocopherols (Added To Preserve Freshness), Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats with Cinnamon Bunches"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, **Brown Sugar**, Rice, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Cinnamon, Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Honey**, Natural And Artificial Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats Apple Caramel Crunch"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, Rice, Dried Apples, Canola Oil, Wheat Flour, Malted Barley Flour, Cinnamon, **Corn Syrup**, Salt, **Molasses**, **Honey**, **Barley Malt Extract,** Natural Flavor. Bht Added To Preserve Freshness

"Honey Bunches of Oats with Apples & Cinnamon Bunches"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Rice, Dried Apples [Apples, Sodium Sulfite (Retains Color)], Canola Oil, Wheat Flour, Malted Barley Flour, Cinnamon, **Corn Syrup,** Salt, Whey (From Milk), **Honey**, **Malted Corn And Barley Syrup**, Apple Juice Concentrate, Natural Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

 "Honey Bunches of Oats with Vanilla Bunches"

Whole Grain Wheat, Rice, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Canola Oil, **Corn Syrup,** Wheat Flour, Corn Meal, Malted Barley Flour, Salt, Whey (From Milk), **Honey**, Ground Vanilla Beans, Natural Flavor. Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats, Whole Grain Honey Crunch"

Whole Grain Wheat, Rice, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar,** Canola Oil, **Corn Syrup**, Wheat Flour, Corn Meal, Malted Barley Flour, Salt, Whey (From Milk), **Honey**, Caramel Color, Natural And Artificial Flavor. Bht Added To Packaging Material To Preserve Product Freshness

 "Honey Bunches of Oats, Whole Grain Almond Crunch"

Whole Grain Wheat, Rice, Whole Grain Rolled Oats, **Sugar, Brown Sugar,** Almonds, Canola Oil, **Corn Syrup**, Wheat Flour, Malted Barley Flour, Corn Meal, Salt, Whey (From Milk), **Honey**, Caramel Color, Cinnamon, Natural And Artificial Flavor. Bht Added To Packaging Material To Preserve Product Freshness

29. Thus, in five of the twelve varieties of "Honey Bunches of Oats," honey is the fifth and least prominent sweetener; in four of the varieties, honey is the fourth and least prominent sweetener; and in three varieties honey is the fourth and second-least prominent sweetener. In sum, the Products are sweetened primarily – indeed, almost exclusively – with refined added sugars.

30. Moreover, each variety of "Honey Bunches of Oats" contains only a miniscule amount of honey.

31. A product branded "Honey Bunches of Oats" that pictorially conveys cereal being covered with honey and a bee in flight hardly means to a reasonable consumer that it is mostly sweetened with sugar and other refined substances or, moreover, that it contains only a miniscule amount of honey, but that is the reality. The deception is compounded by the fact that there is no prominent language or other indication on the packaging that sugar and other refined substances are the primary sweeteners or, indeed, that they are present at all.1

32. The branding and packaging of "Honey Bunches of Oats" cereals is not accurate or justifiable on the basis that honey is the primary or characterizing flavor. Each of the Products contains flavoring ingredients in much greater quantities than honey, and many of these ingredients – such as molasses, brown sugar, nuts, and dried fruit – have flavor characteristics that are far more distinctive than honey. Indeed, even a cereal variety that doubles-down on honey – "Honey Bunches of Oats, Crunchy Honey Roasted" – contains a number of flavoring ingredients that are present in greater proportions than honey.2

33. The Food, Drug, and Cosmetic Act provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

34. The FDA recognizes that product names such as the one at issue here are misleading when they suggest one or more, but not all, of the key ingredients:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

---

1 On the back of "Honey Bunches of Oats" cereal boxes is a paragraph with the heading "Tried and Tasty" in which is subsumed the phrase "a touch of honey." The heading "Tried and Tasty" hardly notifies the reasonable consumer that information about ingredients may follow. Regardless, however, this single obscure phrase in no way ameliorates the falsity and deceptiveness of the Products' overall branding and packaging.

2 These ingredients are almonds, dried bananas, molasses, and cinnamon.

21 C.F.R. § 101.18(b).

35. FDA regulations require that a food product's name disclose the percentage of honey when honey is a "characterizing ingredient:"

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

21 C.F.R. § 102.5(b).

36. Under 21 C.F.R. § 102.5(b). honey is a "characterizing ingredient" of "Honey Bunches of Oats" cereals because the proportion of honey in the Products has a material bearing on price and consumer acceptance of the Products for the reasons set forth above.

37. Honey is also a "characterizing ingredient" of "Honey Bunches of Oats" cereals under § 102.5(b) because the labeling of the Products creates an erroneous impression that honey is present in amounts greater than is actually the case.

38. Defendant's branding and packaging of the Products are designed to – and do - deceive, mislead, and defraud consumers.

39. Defendant's false, deceptive, and misleading branding and packaging of the Products has enabled Defendant to sell more "Honey Bunches of Oats" cereal than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

### D. Facts pertaining to Anita S. Lima

40.  Commencing in or about 2015 and continuing through in or about 2017, plaintiff Anita S. Lima made regular purchases of "to go" cups of "Honey Bunches of Oats with Almonds," which she ate for breakfast several times per week.

41. Plaintiff purchased and consumed Defendant's cereal because, based on Defendant's branding and packaging, she believed that the cereal was primarily if not exclusively sweetened with honey, a substance which Plaintiff believed was healthier than sugar.

42. During the time when she was purchasing and consuming "Honey Bunches of Oats with Almonds," Plaintiff did not take steps to verify whether honey was, in fact, the primary sweetener or a significant sweetener of the product.  A reasonable consumer such as Plaintiff would not have considered it necessary to verify the clear message conveyed by Defendant's branding and packaging of the product.

43. Plaintiff was economically harmed by Defendant's false, deceptive, and misleading branding and packaging conveying the message that its cereal was primarily or substantially sweetened with honey.  The value of the cereal that Plaintiff actually purchased and consumed was materially less than its value as misrepresented by Defendant.

**E. <u>Facts pertaining to Susan Wrublewski</u>**

44. In or about mid-2017, plaintiff Susan Wrublewski saw several television commercials for "Honey Bunches of Oats" cereal which showed the front of the cereal box (as depicted above) and which otherwise emphasized the presence of honey as an ingredient.  As a result, Plaintiff was led to believe that the cereal was healthy because, in part, it was exclusively or primarily sweetened with honey and not sugar.so she instructed her husband to purchase a box, and he did so.   At home, Plaintiff observed that the front of the box of "Honey Bunches of Oats with Almonds" was identical to the box depicted in the commercials, and therefore proceeded to consume the cereal for breakfast.  Plaintiff enjoyed the cereal and therefore started purchasing and consuming it regularly.

However, she subsequently learned that the cereal was in fact almost exclusively sweetened with sugar and other refined sweeteners; hence discontinued its use.

45. Plaintiff was economically harmed by Defendant's false, deceptive, and misleading branding and packaging representing that the Products were primarily or substantially sweetened with honey.  The value of the cereal that Plaintiff actually purchased and consumed was materially less than its value as misrepresented by Defendant.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of themselves and a proposed class (the "Nationwide Class") defined as follows:

> **The Nationwide Class**. All persons who, on or after October 6, 2012, purchased the Products for personal, family, or household purposes in the United States.
>
> Plaintiffs ask the Court to adjudicate all remedies through the Nationwide Class.

47. Additionally, Plaintiffs bring this case as a class action pursuant to Rule 23(a) and (b)(2) on behalf of themselves and a proposed class (the "Injunctive Relief Class") defined as follows:

> **The Injunctive Relief Class.** All persons who, on or after October 6, 2012, purchased the Products for personal, family or household purposes in the United States.
>
> Plaintiffs ask the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

48. Additionally, Plaintiffs bring this case as a class action pursuant to Rule 23(a) and (b)(3) on behalf of themselves and a proposed class (the "Multistate UDAP Class") defined as follows:

**The Multistate UDAP Class.** All persons who, within the relevant limitations periods, purchased the Products for personal, family, or household purposes in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

Plaintiffs ask the Court to adjudicate all remedies through the Multistate UDAP Class.

49. Additionally, Plaintiffs bring this case as a class action pursuant to Rule 23(a) and (b)(3) on behalf of themselves and a proposed subclass (the "Multistate Warranty Class") defined as follows:

**The Multistate Warranty Class.** All persons who, within the relevant limitations periods, purchased the products for personal, family, or household purposes in Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Plaintiffs ask the Court to adjudicate all remedies through the Warranty Multistate Class.

50. Additionally, Plaintiffs brings this case as a class action pursuant to Rule 23(a) and (b)(3) on behalf of themselves and a proposed subclass (the "Massachusetts Class") defined as all persons who, within the relevant limitations periods, purchased the products for personal, family, or household purposes in Massachusetts.

51. There are likely millions of class members in each class. Each class is sufficiently numerous such that joinder is impracticable.

52. There are issues of law and fact common to each class, which common issues predominate over any issues peculiar to individual class members. The principal common issues are: whether

the Products were sold to the public with the branding and packaging as alleged; whether Defendant's branding and packaging omitted material information concerning the percentages of honey and/or added sugars; whether Defendant's branding and packaging conveyed to the reasonable consumer that honey was the primary sweetener or a significant sweetener in the Products; whether Defendant's branding and packaging were formulated and carried out with the intent that others rely on same in connection with the sale of the Products; whether Defendant violated the Minnesota Consumer Fraud Act as alleged; whether Defendant's branding and packaging created an express warranty under Minnesota law, whether the Products as branded, packaged, and sold failed to conform to Defendant's express warranty; whether Defendant was unjustly enriched by its unlawful conduct as alleged; whether class members are entitled to damages and, if so, the proper measure of damages; and whether class members are entitled to injunctive relief and, if so, the proper nature and scope of such relief.

53. Plaintiffs' claims are typical of the claims of class members.   Plaintiffs and all class members purchased cereals that, for all intents and purposes, were identically branded and packaged to mislead, deceive, and defraud consumers.  All claims are based on the same legal theories, and all arise from the same course of conduct.

54. Plaintiffs will fairly and adequately protect the interests of all class members.   Plaintiffs are committed to a vigorous and successful prosecution of this action, are familiar with the legal and factual issues involved, and have retained counsel experienced in the litigation of consumer rights cases, including false advertising class actions.  Neither Plaintiffs nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by any individual class member is likely not substantial, and therefore, the expense and burden of individual litigation would be economically unfeasible; and (b) the prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications that could establish conflicting standards of conduct for Defendant; and (c) there will be no unusual or extraordinary management difficulties in administering this case as a class action.

56. Defendant has acted on grounds generally applicable to the class with respect to the matters alleged herein, thereby making the relief sought appropriate with respect to the class as a whole.

## COUNT I

## VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT

### (on behalf of Plaintiffs and the Nationwide Class)

57. The allegations of all preceding paragraphs are incorporated herein as if fully set forth.

58. Defendant's decisions regarding the branding, packaging, and distribution of the Products are made at, implemented from, and/or ratified at Defendant's corporate headquarters, located in Lakeville, Minnesota.

59. Each box and cup of "Honey Bunches of Oats" cereals sets forth the address of Defendant's corporate headquarters in Lakeville, Minnesota.

60. Defendant's website instructs that consumers should direct questions and other communications to Defendant at its corporate headquarters in Lakeville, Minnesota.

61.  The Products are "merchandise" within the meaning of the Minnesota Consumer Fraud Act, Minn. Stat. §325F.68, Subd. 2.

62. Defendant is a "person" within the meaning of the Minnesota Consumer Fraud Act, Minn. Stat. §325F.68, Subd. 3.

63. Defendant's false, deceptive, and misleading branding and packaging of the Products as alleged herein violates section 325F.69, Subd. 1 of the Act, that provides:

> **Fraud, misrepresentation, deceptive practices.**  The act, use, or employment of any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

64. Defendant's branding and packaging of the Products was formulated and carried out with the intent that others rely thereon in purchasing the cereals.

65. Consumers injured by a violation of the Minnesota Consumer Fraud Act are entitled to sue for damages and other relief pursuant to Minn. Stat. §8.31, Subd.3a, that provides:

> **Private remedies.**  In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and received other equitable relief as determined by the court.

66. Plaintiffs and class members were injured by Defendant's violations of the Act because they paid more to purchase the Products than they would have been willing to pay had the Products not been branded and packaged as alleged herein.

67. Class members will continue to suffer economic harm due to Defendant's unlawful conduct unless this Court issues appropriate injunctive relief

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

(a)  Awarding them and class members monetary damages;

18

(b) Awarding interest on all damages awarded;
(c) Permanently enjoining Defendant from continuing to engage in the unlawful business practices complained of;
(d) Awarding costs and reasonable attorney's fees;
(e) Awarding such further relief as shall be just and proper.

## COUNT II

## BREACH OF EXPRESS WARRANTY

### (on behalf of Plaintiffs and the Nationwide Class)

68.  The allegations of all preceding paragraphs are incorporated herein as if fully set forth.

69.   Plaintiffs and class members are "buyers" within the meaning of Minn. Stat. §336.2-103(1)(a).

70. Defendant is a "seller" within the meaning of Minn. Stat. §336.2-103(1)(d).

71. The Products are "goods" within the meaning of Minn. Stat. §336.2-105(1).

72. Minn. Stat. §336.2-313 states in pertinent part as follows:

(1) Express warranties by the seller are created as follows:

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

73. Through its branding and packaging, Defendant described the Products as being sweetened primarily or significantly with honey, and this description was part of the basis of the bargain between Defendant and each purchaser.  Accordingly, Defendant's description of the Products created an express warranty that they were primarily or, at a minimum, significantly sweetened with honey.

74. The Products do not conform to the express warranty created by Defendant's description of the Products

75. Plaintiffs and class members were injured by Defendant's breach of its express warranty because they paid more to purchase the Products than they would have been willing to pay had the Products conformed to the warranty.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

    (a)  Awarding them and class members monetary damages;
    (b)  Awarding interest on all damages awarded;
    (c)  Awarding costs and reasonable attorney's fees;
    (d)  Awarding such further relief as shall be just and proper.

## COUNT III

## UNJUST ENRICHMENT

### (on behalf of Plaintiffs and the Nationwide Class)

76. The allegations of all preceding paragraphs are incorporated herein as if fully set forth,

77. Plaintiff and class members were harmed, and Defendant was enriched, due to Defendant's unlawful conduct as described herein.  By branding and packaging "Honey Bunches of Oats" cereals to convey the false, deceptive, and misleading message that they are sweetened primarily or significantly with honey, Plaintiff and class members paid more to purchase the Products than they would have but for Defendant's misconduct.

78. Defendant is liable to Plaintiff and class members for monies that it wrongfully and unjustly obtained from them in the form of premium prices paid for the Products.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

    (a)  Awarding them and class members monetary damages;
    (b)  Awarding interest on all damages awarded;
    (c)  Awarding costs and reasonable attorney's fees;
    (d)  Awarding such further relief as shall be just and proper.

## COUNT IV

## VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES

### (on behalf of Plaintiffs and the Multistate UDAP Class)

79. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

80. Defendant's misrepresentations and omissions in the branding and packaging of the Products were unfair and/or deceptive, thus violating the following consumer protection statutes which alternatively provide a basis for redress to Plaintiffs:

    a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

    b.    **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

    c.    **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

    d.    **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.* (with respect to injunctive relief only), California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

    e.    **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

    f.    **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.   **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

q.   **Massachusetts:** Defendant's practices were and are in violation of Massachusetts's Consumer Protection Act, Mass. Gen. Laws. c. 93A, §1 *et seq.*   Plaintiffs' claims are not subject to the pre-suit demand requirement of M.G.L. c. 93A, § 9, because Defendant does not maintain an office in Massachusetts nor does Defendant keep assets in Massachusetts.

r.   **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

s.   **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

t.   **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

u.   **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

v.   **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

w.   **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

x.    **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

y.    **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

z.    **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

aa.   **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

bb.   **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

cc.   **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

dd.   **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ee.   **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ff.  **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

gg.  **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

hh.  **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

ii.  **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

81. Defendant violated the aforementioned consumer protection laws by misrepresenting that the Products are sweetened primarily (or at least significantly) with honey, both through affirmative misrepresentations and omissions of material fact.

82. Contrary to Defendant's misrepresentations and omissions, the Products are sweetened primarily with sugar and other processed substances, with honey present only in miniscule amounts, a fact not clearly or conspicuously disclosed to consumers.

83. Defendant made its false, deceptive, and misleading representations and omissions willfully, wantonly, and with reckless disregard for the truth.

84. Defendant's misrepresentations and omissions were material to Plaintiffs' and class members' decisions to pay a premium for the Products.

85. Pursuant to the aforementioned statutes, Plaintiffs and class members are entitled to recover compensatory damages, restitution, punitive and special damages (including but

not limited to treble damages), reasonable attorneys' fees and costs and injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant statutes.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

    (a) Awarding them and class members actual damages;
    (b) Awarding them and class members statutory damages;
    (c) Multiplying any actual damages awarded;
    (d) Awarding interest on all damages awarded;
    (e) Permanently enjoining Defendant from continuing to engage in the unlawful business practices complained of;
    (f) Awarding costs and reasonable attorney's fees;
    (g) Awarding such further relief as shall be just and proper.

## COUNT V

## VIOLATIONS OF STATE EXPRESS WARRANTY STATUTES

### (on behalf of Plaintiffs and the Multistate Warranty Class)

86. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

87. Through its branding and packaging, Defendant described the Products as being sweetened primarily or significantly with honey, and this description was part of the basis of the bargain between Defendant and each purchaser.  Reasonable consumers would not have paid as much to purchase the Products had the Products been described accurately.

88. Pursuant to the Uniform Commercial Code as adopted in the following jurisdictions, Defendant's description of the Products created an express warranty that the cereals were primarily or, at a minimum, significantly sweetened with honey, which statutes provide Plaintiffs with an alternative means of redress: Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Louisiana, Massachusetts; Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma,

Pennsylvania, South Carolina, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

89. The Products do not conform to the express warranty created by Defendant's description of them.

90. Plaintiffs and class members were injured by Defendant's breach of its express warranty because they paid more to purchase the Products than they would have been willing to pay had the Products conformed to the warranty.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

(a) Awarding them and class members monetary damages;
(b) Awarding interest on all damages awarded;
(c) Awarding costs and reasonable attorney's fees;
**(d)** Awarding such further relief as shall be just and proper.

## COUNT VI

## VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

### (on behalf of the Massachusetts Class)

91. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

92. At all relevant times, Defendant was engaged in trade or commerce in Massachusetts.

93. Defendant's misrepresentations and omissions in the branding and packaging of the Products were unfair and/or deceptive in violation of M.G.L. c. 93A, § 2.

94. Defendant's misconduct constituted *per se* violations of M.G.L. c. 93A, § 2, because they violated the following consumer protection regulations promulgated by the Attorney General:

(a) 940 C.M.R. 3.05(1), which states in pertinent part:

> No claim or representation shall be made by any means concerning a product
> which directly, or by implication, or by failure to adequately disclose additional
> relevant information, has the capacity or tendency or effect of deceiving buyers
> or prospective buyers in any material respect.

(b) 940 C.M.R. 3.16(2), which makes any act or practice a violation of M.G.L. c. 93A,
§ 2, if:

> any person or any legal entity subject to this act fails to disclose to a buyer
> or a prospective buyer any fact, the disclosure of which may have influenced
> the buyer not to enter into the transaction . . . .

95. Defendant's violations of M.G.L. c. 93A, § 2, were knowing or willful in nature.

96. Plaintiffs and class members were harmed by paying more to purchase the Products

than they would have but for Defendant's misconduct.

97. Plaintiffs' claims are not subject to the pre-suit demand requirement of M.G.L. c. 93A,

§ 9, because Defendant does not maintain an office in Massachusetts nor does

Defendant keep assets in Massachusetts.


WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

(a) Awarding them and class members actual damages of $25.00, whichever is greater
(b) Doubling or trebling any actual damages awarded;
(c) Awarding interest on all damages awarded;
(d) Permanently enjoining Defendant from continuing to engage in the unlawful business
practices complained of;
(e) Awarding costs and reasonable attorney's fees;
(f) Awarding such further relief as shall be just and proper.

28

## COUNT VII

## BREACH OF MASSACHUSETTS EXPRESS WARRANTY

### (on behalf of the Massachusetts Class)

98. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

99. Plaintiffs and class members are "buyers" and Defendant is a "seller" within the meaning of M.G.L. c. 105, § 2-103.

100. The Products are "goods" within the meaning of M.G.L. c. 105, § 2-105.

101. Defendant's branding and packaging of the Products constitutes an express warranty that the Products are sweetened primarily or substantially with honey (and not sugar), as they contain affirmations of facts and/or promises which relate to the goods and become part of the basis of the bargain between Defendant and Massachusetts consumers. Reasonable consumers would not pay as much to purchase the Products if the Products were represented accurately.

102. The Products do not conform to the express warranty created by Defendant's description of them.

103. Plaintiffs and class members were injured by Defendant's breach of its express warranty because they paid more to purchase the Products than they would have been willing to pay had the Products conformed to the warranty.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

(a) Awarding them and class members monetary damages;
(b) Awarding interest on all damages awarded;
(c) Awarding costs and reasonable attorney's fees;
(d) Awarding such further relief as shall be just and proper.

**JURY TRIAL DEMAND**

Plaintiffs demand jury trial on all causes of action so triable.


**ANITA S. LIMA**
**SUSAN WRUBLEWSKI**
**On behalf of themselves and all others similarly situated**

By their attorneys:

*/s/Kenneth D. Quat*
BBO#408640
**QUAT LAW OFFICES**
929 Worcester Rd.
Framingham Massachusetts 01701
508-872-1261
ken@quatlaw.com

*/s/Michael R. Reese*
*/s/Carlos F. Ramirez*
**REESE LLP**
100 West 93rd St., 16th Floor
New York, New York 10025
212-643-0500
mreese@reesellp.com
cramirez@reesellp.com


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 8, 2019.


*/s/ Kenneth D. Quat*