**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

**ANITA S. LIMA and SUSAN WRUBLEWSKI,**      )
individually and on behalf of others similarly situated,      )
)
**Plaintiffs,**      )
)
**v.**      )      **Civil Action No. 18-12100-ADB**
)
**POST CONSUMER BRANDS, LLC,**      )
)
**Defendant,**      )
_____)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**
**(Leave to file granted 4/2/19)**

Plaintiffs Anita S. Lima and Susan Wrublewski submit this memorandum of law in opposition to the motion to dismiss their First Amended Class Action Complaint ("Complaint" or "FAC") filed by Defendant Post Consumer Brands, LLC ("Defendant" or "Post").

**Introduction**

Post manufactures and markets a line of popular breakfast cereals marketed as "Honey Bunches of Oats." The cereals are sold in rectangular boxes containing 13 ounces or more of cereal and in individual serving "to go" cups containing 2.25 ounces of cereal. FAC, ¶¶20, 21.

The labeling and packaging of "Honey Bunches of Oats" cereals scream "HONEY." The word "honey" is the first descriptor in the product name, and that name - emblazoned in large, bold letters in circular format - occupies most of the center portion of each package front (known in regulatory parlance as the "principal display panel").[1] The product name is further highlighted by being silhouetted against a bright orange/yellow background simulating the sun. In the middle of

_____

[1] *See* 21 C.F.R. § 101.1 and note 5, *infra*.

the "sun" is a large wooden honey dipper covered with and dripping honey. Together, the name "Honey Bunches of Oats" and the dripping honey dipper dominate the package. In addition, near the bottom of the package and just to the left of an image of a spoonful of cereal, is the outline of a honeybee, and trailing the honeybee is a broken line indicating a flight path passing through or over the cereal. The front of a typical Honey Bunches of Oats box is depicted here:



The front of a typical Honey Bunches of Oats "to go" cup is depicted here:



Thus, as Plaintiffs allege, the labeling and packaging of the cereals convey the clear message that honey is their primary sweetener, or at least a significant sweetener in relation to sugar and other refined substances. FAC, ¶26.

That honey is perceived by consumers as healthier than sugar and other refined sweeteners cannot be seriously questioned, as shown by the representative sampling of industry and general news publications described in paragraphs 10 – 16 of the Complaint. These publications, and many others, further document that consumers are willing to - and do - pay higher prices for products believed to be sweetened with honey as opposed to sugar. FAC, ¶¶15–16.

Plaintiffs purchased Honey Bunches of Oats cereals because they reasonably believed they were sweetened primarily or significantly with honey and were therefore healthier. FAC ¶¶41, 44. Because the cereals were perceived as healthier, Plaintiffs were willing to pay a premium price for them. FAC, ¶¶43, 45.  Unfortunately, and to their surprise and consternation, Plaintiffs eventually discovered that they had been deceived by Post because, in truth, honey is essentially a token "throw-in" sweetener in Honey Bunches of Oats, present in such small amounts that by volume it is the last or second-to-last of four or five sweeteners in the cereals (depending on variety).[2]  All of the other, more prevalent sweeteners are processed sugars - primarily regular sugar, brown sugar, and corn syrup. Indeed, honey is such a minor ingredient in Honey Bunches of Oats that in most of the varieties it is the last or second-to-last actual "food" ingredient by volume, exceeding only additives such as artificial colors and preservatives. FAC, ¶¶28–30.

Plaintiffs and thousands of other consumers were harmed because they paid a premium for cereals represented as having a high concentration of honey, a natural sweetener, compared to amounts of sugar and other refined sweeteners. In fact, however, the reality is the opposite. Indeed,

---

[2] Per FDA regulations, ingredients must be listed in the nutrition panel in descending order of predominance by volume. 21 C.F.R. § 101.4(a)(1).

with respect to sweeteners, Honey Bunches of Oats is little different from the multitude of other sugar-laden cereals in the marketplace. The price premiums have inured to Post in the form of higher profits at the expense of consumers.

Plaintiffs' claims are meritorious and deserve to be adjudicated. Moreover, as shown below, they are not subject to dismissal on any of the technical legal grounds advanced by Post.

<u>**Argument**</u>

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 96 (1st Cir. 2007). A pleading is not subject to dismissal so long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim for relief is "plausible" if the facts "raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

**I.   <u>POST HAS NOT CARRIED ITS HEAVY BURDEN OF SHOWING THAT THE FOOD, DRUG, AND COSMETIC ACT PREEMPTS ANY OF PLAINTIFFS' CLAIMS.</u>**

**A.   <u>There is a strong presumption against preemption.</u>**

As courts often note, "[h]ealth and safety issues have traditionally fallen within the province of state regulation," including "the regulation of food and beverage labeling and branding." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009). *See Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products."); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1187 (S.D. Cal.

2015) ("Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers.").  Consequently, "in all pre-emption cases, *[but] particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,'* . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (emphasis added).   The party urging preemption bears a "heavy burden" of establishing Congress intended preemption. *Pennsylvania Med. Soc. v. Marconis*, 942 F.2d 842, 846 (3d Cir. 1991).  The "ultimate touchstone" is Congress's purpose as "discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

Moreover, when raised in the context of a motion to dismiss, an affirmative defense of preemption cannot succeed unless "the complaint itself demonstrates' that the claims are preempted." *Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *3 (N.D. Fla. April 23, 2015). *See also Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2019 WL 1409302, at *12 (D. Mass. Mar. 28, 2019) ("Where a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense [including preemption], the facts establishing that defense must: (1) be 'definitively ascertainable from the complaint and other allowable sources of information,' and (2) 'suffice to establish the affirmative defense with certitude.'").  Furthermore, "[a] plaintiff is 'not required to anticipate and plead around affirmative defenses raised by [a defendant].'" *Nat'l Ass'n of the Deaf*, 2019 WL 1409302, at *12.

Additionally, if there is any ambiguity in a preemption clause, courts "have a duty to accept the reading . . . that disfavors pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). *See Vass v. Blue Diamond Growers*, 2015 WL 9901715, at *4 (D. Mass. Aug. 11, 2015)

("The Supreme Court has repeatedly recognized that 'when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption.'").

Finally, the existence of any questions of fact prevents dismissal on preemption grounds. *See Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F. 3d 215, 235 (1st Cir. 2005) ("fact-finder determinat[ion] . . . [might] form the basis for equitable relief on a theory of unjust enrichment without presenting any conflict with the allegedly preempting statute"); *In re Zofran (Ondansetron) Products Litigation*, ___ F. Supp. 3d ___, 2019 WL 454593, at *21 (D. Mass. Feb. 5, 2019) ("preemption presents a question of fact to be considered on summary judgment like any other factual issue"); *Parisi v. Trustees of Hampshire College*, 711 F. Supp. 57, 61 (D. Mass. 1989) (denying motion to dismiss "subject to later disposition should it appear from the material facts developed through discovery" that preemption exists).

### B. <u>Overview of food labeling under the FDCA and FDA regulations.</u>

The Food, Drug, and Cosmetic Act of 1938 ("FDCA" or the "Act") prohibits the misbranding of food in interstate commerce. 21 U.S.C. § 331. Section 343 of the Act includes 23 subsections specifying reasons why a food "shall be deemed misbranded." 21 U.S.C. § 343(a)–(y). Importantly, the first of these subsections provides broadly that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). *See, e.g.*, *Zupnik v. Tropicana Products, Inc.*, 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010) ("Congress presumably chose to include § 343(a) in the statutory scheme in order to allow the FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading aspect of the particular label."). In addition, pursuant to its statutory authority, the Food and Drug Administration ("FDA") has promulgated numerous food labeling regulations,

which are found at 21 C.F.R. § 101.1 *et seq.*[3]

In 1990, the FDCA was amended by the Nutrition Labeling and Education Act (the "NLEA"). The NLEA provides, *inter alia*, that state requirements concerning food labeling which are not identical to enumerated requirements of the FDCA are expressly preempted. 21 U.S.C. § 343-1(a). Thus, the NLEA *does not* preempt state law claims so long as they seek to enforce requirements identical to those under federal law, as Post acknowledges.  Post Mem., 5. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005) ("a state-law labeling requirement is not pre-empted . . . if it is equivalent to, and fully consistent with [federal] misbranding provisions"); *Kaufman v. CVS Caremark Corp.*, 836 F. 3d 88, 92 (1st Cir. 2016) ("neither federal nor state law poses any bar to recovery under [the New York Consumer Protection Act] to the extent that recovery is predicated on a failure by CVS to comply with the requirements of FDCA section 343(r)); *Reynolds*, 2015 WL 1879615, at *9 ("By its plain language the NLEA does not preempt state requirements that are identical to federal requirements in the applicable sections of the FDCA and its implementing regulations."). *Cf. Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315 (2008) (state claims premised on violations of FDA regulations "parallel, rather than add to, federal requirements").[4]

---

[3] The FDA, established by the FDCA, is a department within the Department of Health and Human Services. It is charged with promoting and protecting the public health by, *inter alia*, "ensuring that foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393 (b)(2)(A).

[4] There is no "implied" or "field" preemption in this area, as the NLEA "shall not be construed to preempt any provision of State law, unless such provision is *expressly* preempted under [the FDCA]." NLEA § 6(c) (statutory note to § 343-1) (emphasis supplied). *See Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015); *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137 (C.D. Cal. 2010) ("The NLEA's rule of construction concerning the scope of preemption excludes implied preemption . . ."). Post has not argued to the contrary.

### C. **Plaintiffs seek to enforce state law labeling requirements that are identical to those under federal law.**

#### 1. **Plaintiffs' core allegation.**

Under the FDCA, a food is considered misbranded if, *inter alia*, "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).[5] Plaintiffs' core allegation mirrors this standard, as the Complaint makes clear:

> A product branded "Honey Bunches of Oats" that pictorially conveys cereal being covered with honey and a bee in flight hardly means to a reasonable consumer that it is mostly sweetened with sugar and other refined substances or, moreover, that it contains only a miniscule amount of honey, but that is the reality. . . . Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud consumers.

FAC, ¶¶31, 38. This allegation is specifically incorporated into each count of the Complaint (FAC, ¶¶57, 68, 76, 79, 86, 91, 98), and the claims themselves track FDCA requirements. For example, the claim asserted under the Minnesota Consumer Fraud Act (count I) reads in pertinent part:

> Defendant's false, deceptive, and misleading branding and packaging of the Products as alleged herein violates section 325F.69, Subd. 1 of the Act, that provides:

> **Fraud, misrepresentation, deceptive practices.** The act, use, or employment of any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

FAC, ¶63 (emphasis in original).[6]  Similarly, the unjust enrichment claim asserted on behalf of a nationwide class (count III) reads:

---

[5] The term "label" or "labeling" includes a product's "principal display panel," defined as "the part of a label that is most likely to be displayed presented, shown, or examined under customary conditions of display for retail sale." 21 C.F.R. § 101.1. Thus, for Honey Bunches of Oats, the "principal display panel" is the front of the cereal box and the front of the "to go" cup.

[6] Under Minn. Stat. § 8.31, Subd.3a, damages are recoverable for violations of this section.

> Plaintiff and class members were harmed, and Defendant was enriched, due
> to Defendant's unlawful conduct as described herein. By branding and packag-
> ing "Honey Bunches of Oats" cereals to convey the false, deceptive, and mis-
> leading message that they are sweetened primarily or significantly with honey,

FAC, ¶77. And, the express warranty claim asserted on behalf of a multistate class (count V) states:

> Through its branding and packaging, Defendant described the Products as
> being sweetened primarily or significantly with honey, and this description
> was part of the basis of the bargain between Defendant and each purchaser.
> Reasonable consumers would not have paid as much to purchase the Products
> had the Products been described accurately.

FAC, ¶87.

Courts have consistently held that state law claims such as these – i.e., premised on false,

misleading, and deceptive conduct - are not preempted by the FDCA. Thus, in *Zupnik,* the

defendant argued unsuccessfully that a food producer could not be sued under state law for false

or misleading conduct because "[this] would, in effect, impose requirements that 'are not imposed'

or 'differ from those' explicitly laid out in the federal statutes and regulations." 2010 WL 6090604,

at *2.  The court explained:

> Congress presumably chose to include § 343(a) in the statutory scheme
> in order to allow the FDA to target specific false or misleading labels
> without having promulgated regulations that address the specific false or
> misleading aspect of the particular label. *Because Congress has also
> allowed states, at the very least, to pass statutes identical to § 343(a), a
> private party equipped with a private right of action under state law is able
> to sue to enforce a state statute identical to § 343(a), just as the FDA would
> be able to sue to enforce § 343(a) itself.*

*Id.* at *6 (emphases supplied). *See also Kaufman*, 836 F.3d at 92 (claim of false and deceptive

labeling under New York law mirrored FDCA standard, hence no preemption); *Holt v. Foodstate,

Inc.*, 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015) ("[The] state law claims brought by

Plaintiffs, which are predicated on the basis that Defendant's products' labels are either false or

misleading, are not expressly preempted by the FDCA."); *Cortina*, 94 F. Supp. 3d at 1189 ("The

express preemption provision of the FDCA contained in section 343-1 therefore does not preempt the claims arising from false or misleading labels regulated by section 343(a)."); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 85 (D.N.J. 2011) (same). *Cf. Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 474 (S.D.N.Y. 2014) (claims not preempted under state laws that "declare[] unlawful deceptive acts or practices in the conduct of any business, trade or commerce," that "prohibit[] usage of false or misleading express warranties that cause loss," and "proscribe[] inequitable benefit at another's expense").

Moreover, courts understand that Congress omitted a private right of action from the FDCA because "it determined that widely available state rights of action provided appropriate relief for injured consumers." *Wyeth*, 555 U.S at 574. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 116 (2014) ("It is unlikely that Congress intended the FDCA's protection of health and safety to result in less policing of misleading food and beverage labels than in competitive markets for other products.").

Plaintiffs further allege that Post's deception is compounded by the fact that there is no prominent language or other indication on Honey Bunches of Oats packaging that sugar and other refined substances are the primary sweeteners or, indeed, that they are present at all." FAC, ¶31. This claim also parallels a federal labeling principle:

> [t]he labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).  For this reason as well, therefore, Plaintiffs' claims are not preempted.

In sum, Plaintiffs' claims mirror both the letter and spirit of federal labeling requirements. And, through their state law claims Plaintiffs are simply attempting to vindicate rights that

Congress purposely did not foreclose in enacting the FDCA. No claims are preempted.

## 2. Violations of 21 C.F.R. § 102.5(a)

Plaintiffs also base their claims on the fact that the name "Honey Bunches of Oats" fails to disclose the percentages of honey and sugar (and/or other refined sweeteners). FAC, ¶¶26, 31, 34, 35, 37, 52, 82. This allegation tracks the FDA requirements that the percentage of an ingredient must be disclosed in a food's "common or usual name" when that ingredient "has a material bearing on price or consumer acceptance" or "when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).[7] Plaintiffs allege that each of these criteria apply here (FAC, ¶36), and Post does not dispute that no sweetener percentages are included in the product name. Thus, these claims are identical to federal law and there is no preemption. *See, e.g.*, *Reynolds*, 2015 WL 1879615, at *6 ("[a] jury could conclude that the 'common or usual name' of this product does not 'accurately describe' the characterizing ingredients or adequately 'indicate that the named [ingredient] is present"); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *12 (E.D.N.Y. July 21, 2010) (no preemption of claims alleging that the name "vitaminwater" violated state law because it "fails to mention one other notable ingredient (sugar)").

Straining to avoid this result, Post argues that the "common or usual name" of the products is "cereal," not "Honey Bunches of Oats." Post Mem., 9. However, this conclusory statement - even if true - does nothing for Post because regardless of which moniker constitutes the products' "common or usual name," the regulation requires that Post must disclose the percentage of honey

---

[7] This regulation reflects the FDA's longstanding view that conspicuous disclosure of certain ingredients "is often necessary for the consumer to choose between two competing products when the amount of the ingredient is important to the value of the food." Common or Usual Names for Nonstandardized Foods, 38 Fed. Reg. 6964, 6964 (Mar. 14, 1973).

and the presence of refined sugars. 21 C.F.R. § 102.5(b).

Moreover, Post's own conduct belies its position. Post explains, correctly, that every packaged food label must state "the identity of the commodity" and that because federal law does not prescribe a specific identity for breakfast cereal, Post may instead use the product's "common or usual name" as a "statement of identity" pursuant to 21 C.F.R. § 101.3(b)(2). Post Mem, 10–11. The problem, however, is that a "statement of identity" must be "one of [the] principal features" of a food's principal display panel. 21 C.F.R. § 101.3(a). This means that it must be presented, *inter alia*, "in bold type . . . in a size reasonably related to the most prominent printed matter on such panel." 21 C.F.R. § 101.3(d). Here, the large and bold words "HONEY BUNCHES OF OATS" circling a bright yellow sun dominate the front panel of the packages, and the slightly less bold and highlighted phrase "with Crispy ALMONDS" is just below it. In stark contrast, the word "cereal" is printed in a much smaller, non-descript font and is positioned well to the side of the front panel, rendering it barely noticeable. As the FDA "prominence" regulation confirms:

> A word, statement, or other information required by or under authority of the act to appear on the label may lack that prominence and conspicuousness required [] by reason (among other reasons) of . . . *[s]mallness or style of type in which such word, statement, or information appears, insufficient background contrast, obscuring designs or vignettes, or crowding with other written, printed, or graphic matter.*

21 C.F.R. § 101.15(a)(6) (emphases added). Thus, the term "cereal" on Honey Bunches of Oats packages falls well short of meeting the criteria of a true "statement of identity," as confirmed by Illustration 1 below:

Illustration 1                                Illustration 2

                  

*U.S.D.A. Food Labeling Guide, supra.  See also* Warning Letter to Cytosport Inc. (June 29, 2011), *available at* https://goo.gl/dUqci8 (finding product misbranded under 21 U.S.C. § 343(a)(1) because statement of identity, "Protein Nutrition Shake," was significantly smaller and less prominent than the name "MUSCLE MILK").

Perhaps recognizing this difficulty, Post pivots to saying that "Honey Bunches of Oats" is a "brand name," but this just creates more trouble for Post since the FDA has made clear that "[b]rand names . . . . should not be unduly prominent compared to the statement of identity." U.S. Food and Drug Admin., *A Food Labeling Guide for Industry* (2013), citing 21 C.F.R. § 101.3(b) and (d).[8]  In sum, the name "Honey Bunches of Oats" bears all the earmarks of a "common or usual name."

Accordingly, Plaintiffs' claims based on Post's alleged violations of 21 C.F.R. § 102.5(b)

---

[8] Also, the FDA has made clear that "[t]he common or usual name of a food [] may be a coined term." *Id.*

are not preempted. At a minimum, there are clearly issues of fact regarding Post's usage of the names "Honey Bunches of Oats" and "cereal" that preclude dismissal as a matter of law.

### D. The FDA's flavor labeling regulation is irrelevant to, and therefore does not preempt, Plaintiffs' sweetener-based claims.

Post also argues for preemption on the basis that the cereals comply with the FDA's flavor labeling regulation, 21 C.F.R. § 101.22(i). In Post's view, Plaintiff's claims are preempted because honey is the cereals' "primary recognizable flavor" and the regulation permits the use of words and other means to convey flavor regardless of whether the food contains an actual ingredient associated with the flavor. Post Mem., 5–6. However, the flavor regulation is of no consequence here: even assuming *arguendo* that honey is in fact the "primary recognizable flavor" in Honey Bunches of Oats (a dubious proposition at best that is contradicted by the Complaint, at ¶32), that regulation does not reflect an intent to regulate *sweetener* labeling, much less the "clear and manifest" intent mandated by the Supreme Court. *Wyeth*, 555 U.S. at 565. Indeed, Post has not identified any federal statute or regulation that specifically governs the labeling of sweeteners in general or of honey in particular. Moreover, the FDA has long recognized that for purposes of the FDCA regulatory scheme, "[s]weeteners are not spices or flavors." Food Labeling; Spices, Flavorings, Colorings and Chemical Preservatives, 38 Fed. Reg. 20,718, 20,720 (Aug. 2, 1973).

In sum, a company's compliance with a regulation such as 21 C.F.R. § 101.22(i) that is specific to one aspect of food labeling has no preemptive effect on claims alleging non-compliance with regulations governing other aspects of labeling. As has often been recognized, "if some aspects of a label are required or permitted, the rest of the label must still comply with § 343(a)(1) and not be 'false or misleading in any particular.'" *Reynolds,* at *3, citing *United States v. An Article of Food Labeled Nuclomin,* 482 F. 2d 581, 583 (8th Cir. 1973).

*Red v. Kraft Foods, Inc.* is directly on point and highlights the fatal flaw in Post's theory.

There, plaintiffs alleged – not unlike Plaintiffs here - that the manufacturer's use of the word "honey" in the name and on the label of a food product ("Honey Maid" graham crackers) was false and misleading because the product contained significant amounts of other ingredients such as sugar and high fructose corn syrup.  754 F. Supp. 2d at 1139, 1142–43. Defendants' motion to dismiss on the same ground advanced by Post - that "the challenged words and images concerning . . . honey . . . [were] preempted because they [complied] with the FDA's 'characterizing flavor' regulations at 21 C.F.R. § 101.22(i) -  was denied.  As the court explained:

> Plaintiffs allege that Honey Maid's product name, the prominent second use of the word "Honey" directly below it, and the prominent image of flowing honey are intended to convey the message that Honey Maid Graham Crackers are primarily sweetened with honey and not that they are "honey flavored." The Court would decline to construe these usages as mere representations of "characterizing flavor."

*Id.* at 1142–43.  *Cf. Reynolds,* 2015 WL 1879615, at *7 (phrase "flavored juice blend" on label that arguably complied with FDCA requirement specific to fruit juice labeling "[did] not necessarily cure or neutralize the allegedly false or misleading statement '100% Cranberry Pomegranate'"); *Saeidian v. Coca Cola Co.*, 2015 WL 12803783, at *6 (C.D. Cal. July 6, 2015) (allowing claim concerning fruit juice labeling to proceed under § 343(a)). *Compare, In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2017 WL 4676585, at *5 (deceptive labeling claims analyzed under FDA flavoring regulation since "it is not clearly alleged that any Plaintiffs purchased the Products because of the promise of maple *sweetener* as opposed to maple *flavoring*" (emphases supplied)).

The sound reasoning of these cases should be followed here. There is nothing in the FDCA or in FDA regulations that permits Post to evade responsibility for falsely and deceptively promoting honey as a significant sweetener in its cereals (compared to sugar) simply by characterizing honey – accurately or not - as the primary flavor.

The cases from which Post attempts to derive support are easily distinguishable. Thus, in *Red v. The Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010), plaintiffs alleged the terms "a Cholesterol Free Food" and "0g Trans Fat per serving" appearing on food packages were literally false. The court held, simply, that the claims were preempted because federal law specifically defined those terms as well as the circumstances under which they could be used. *Id.* at *4, *6. Moreover, the case did not involve the FDA's flavor regulation, and Post does not contend that federal law defines the terms "Honey Bunches of Oats" or "honey" or otherwise regulates labeling with regard to food *sweeteners*.[9] And, in *In re Quaker Oats*, plaintiffs alleged the phrase "maple and brown sugar" on oatmeal packages falsely implied the presence of actual maple syrup. Preemption was found because, unlike here, a federal law specifically governs the labeling of products purporting to contain maple syrup, and none of the law's exceptions allowing state regulation applied to the plaintiffs' claims.  2017 WL 4676585, at *5.  Further, Plaintiffs here have sufficiently alleged they purchased Honey Bunches of Oats because Post labeled them as containing a certain *sweetener*, i.e., honey, and not because they were labeled as honey flavored.[10]

Accordingly, Plaintiffs' claims are not preempted by 21 C.F.R. § 101.22(i).

---

[9] Also, the court's analysis of the Trans Fat nutrient content claim was negated by the Ninth Circuit's subsequent decision in *Reid*, *supra*.

[10] The additional cases cited by Post in footnote 5 of its memorandum are no less inapposite, as all involved flavoring claims - specifically, that manufacturers misrepresented that products' fruit flavors derived from actual fruit. The consumers' claims were deemed preempted because, as noted, the FDA flavor labeling regulation permits the use of fruit names and fruit images to depict a primary recognizable flavor even where no actual fruit is present.  Consequently, these cases actually buttress Plaintiffs' position that the FDA flavor labeling regulation has no bearing on their sweetener-based claims.

## II.   THERE IS NO BASIS FOR DISMISSING PLAINTIFFS' CONSUMER PROTECTION ACT CLAIMS.

### A.   Plaintiffs were not required to send Post a pre-suit demand letter under Mass. Gen. Laws ch. 93A, § 9.

As Post acknowledges, a pre-suit demand letter under Mass. Gen. Laws. ch. 93A, § 9, is unnecessary "if the prospective respondent does not maintain a place of business or does not maintain assets within the commonwealth." Post Mem., 13. The Supreme Judicial Court has held that this provision "excuses the plaintiff from serving a demand letter if the prospective respondent *either* lacks a place of business in Massachusetts *or* does not keep assets in Massachusetts." *Moronta v. Nationstar Mortgage, LLC*, 476 Mass. 1013 (2016) (emphasis added). Plaintiffs allege that this exception applies here. FAC, ¶80(q). In rebuttal, Post contends that a single statement in an SEC form - indicating that Post has a "manufacturing facility" in Clinton, Massachusetts – establishes as a matter of law that Plaintiffs were required to send a demand letter prior to filing their Chapter 93A claims in court.  Post is wrong for several reasons.

First, Post assumes the existence of an essential fact not in the record – namely, that the Clinton plant was a Post "place of business" and a Post "asset" on October 5, 2018, the date this action was filed. Therefore, even assuming *arguendo* that the § 9 demand requirement applies, the current record does not support dismissal.

Second, the SEC form is inherently contradictory as to the entity which actually owns and uses the Clinton plant. According to the Town of Clinton assessors, the record owner of the plant (located at 20 Cameron Street) is Weetabix Co., Inc., a fact buttressed by the signage at the property. Declaration of Kenneth D. Quat, Esquire, exhibits A, B.  Yet according to Post's 10-K form, Weetabix is a subsidiary of Post Holdings, Inc., not defendant Post Consumer Brands, LLC. Moreover, Post has not submitted any evidence, or even argued, that any Post Consumer Brands

products have ever been manufactured at the Clinton plant, much less at times relevant to this action. The existence of these critical factual issues requires denial of Post's motion, whether it is treated as a motion to dismiss or as one for summary judgment pursuant to Fed. R. Civ. P. 12(d).

And, third, even if *arguendo* Post Consumer Brands had some direct connection to the Clinton plant on October 5, 2018, this still would not trigger the demand letter requirement as a matter of law. Post simply assumes, without providing any supporting authority or analysis, that a manufacturing facility constitutes a "place of business" within the meaning of the statute, but this is erroneous. In common parlance, a "place of business" means precisely what it implies - a place where business is transacted. *See Merriam-Webster On-Line Dictionary* ("a place, such as a store, bank, etc., where business is done"). Similarly, in legal parlance, a "place of business" is "[t]he location at which one carries on his business or employment." *Black's Law Dictionary,* 8th ed. Thus, a facility such as the Clinton plant - with which the consuming public has no contact and where no corporate affairs are conducted - is simply not a "place of business." At a minimum, however, this presents a factual question that precludes dismissal at the pleading stage of the case.

Accordingly, Plaintiffs' Chapter 93A claims are not subject to dismissal due to lack of a pre-suit demand letter.[11]

**B.**  **Plaintiffs have plausibly alleged that Post's labeling and packaging tend to deceive reasonable consumers as to the amount of honey in the products vis-à-vis refined sugars.**

Post also contends Plaintiffs' consumer protection claims should be dismissed under Rule

---

[11] On pages 12-14 of its memorandum, Post engages in a choice-of-law analysis, apparently in support of its argument that a pre-suit demand letter was required under Massachusetts law. As discussed, Post's argument is wrong on the merits. However, to the extent that this analysis is intended to suggest that Minnesota law cannot apply to Plaintiffs' consumer protection (or other) claims, that too should be rejected: it is belied by both the facts and law, but in any event Post has not sought dismissal on this basis. Nonetheless, should the Court believe that substantive choice-of-law rulings should be made at this early stage of the case, Plaintiffs request an opportunity to fully brief this issue.

12(b)(6) because they do not adequately allege a deceptive practice under either Massachusetts or Minnesota law.  This argument should be rejected because Plaintiffs have sufficiently alleged that the labeling and packaging of Honey Bunches of Oats are likely to deceive a reasonable consumer, as detailed below.

As Post admits, in both jurisdictions a business practice is deceptive so long as it has "a tendency to deceive" a reasonable consumer. *Aspinall v. Philip Morris Co., Inc.*, 442 Mass. 381, 394 (2004); *Curtis v. Philip Morris Companies, Inc.*, 2004 WL 2776228, at *4 (Minn. Dist. Ct. Nov. 29, 2004) (applying reasonable consumer standard to claim under Minnesota Consumer Fraud Act and citing *Aspinall*). The test is whether an act or practice "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall*, 442 Mass. at 396.  Moreover, consumer protection statutes such as these are remedial in nature and so "are liberally construed in favor of protecting consumers." *Liabo v. Wayzata Nissan, LLC*, 707 N.W.2d 715, 724 (Ct. App. Minn. 2006). *See Shepard v. Finance Assoc. of Auburn, Inc.*, 366 Mass. 182, 191 (1974). Furthermore, contrary to Post's suggestion (*see* Post Mem., 17), in neither jurisdiction must a consumer show actual reliance on the deceptive practice in order to obtain relief. *Aspinall*, 442 Mass. at 394; *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001); Minn. Stat. § 325F.69, Subd. 1 (explicitly disclaiming reliance requirement).

It is also well-understood that the determination of whether an allegedly deceptive business practice violates a state UDAP statute cannot ordinarily be resolved at the motion to dismiss stage, prior to any discovery being conducted. *Aspinall*, 442 Mass. at 394 ("Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis and not by the subjective measure argued by the defendants."); *Wiegand v. Waiser Automotive Groups, Inc.*, 683 N.W.2d

807, 812–13 (Minn. 2004) (motion to dismiss improperly allowed because "it is unclear what evidence might be produced consistent with the complaint")[12]  As has been noted, it is "[a] rare situation in which granting a motion to dismiss is appropriate" under the "reasonable consumer" standard. *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2018) (reversing dismissal of California consumer protection claims).

Turning to substance, Post first posits that reasonable consumers would simply understand that the term "honey" and the honey images on Post's cereal packages refer to flavor. Post Mem., 18.  Aside from being a totally conclusory (and self-serving) statement; this ignores the fact that how a reasonable consumer perceives a manufacturer's descriptions of a product is precisely the kind of factual issue that resists resolution as a matter of law.  For purposes of the present motion all that matters is whether Post's alleged misconduct can reasonably be said to have a tendency to deceive as to the relative amounts of the product's sweeteners; as explained above, of that there can be little doubt.  And Post's second proposition – that there can be no deception as a matter of law so long as *any* amount of a labeled ingredient (in this case, honey) is present – has been soundly rejected. As the Second Circuit Court of Appeals recently emphasized:

> The rule that Defendant [urges] – that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling. . . . [and] would validate highly deceptive marketing.

*Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018).

---

[12] *See also Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) ("The question is whether a reasonable consumer would be misled . . . is [ultimately] one of reasonability, which cannot be resolved on Defendant's motion to dismiss."); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *12 (N.D. Cal. May 15, 2013) (holding it plausible that a reasonable consumer would pay a premium price based on "front of the package" labeling claims and concluding that defendant's "arguments raise ultimate questions of fact and issues of class certification that are beyond the scope of a Rule 12(b)(6) motion"); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *15–18 (E.D.N.Y. July 21, 2010) (holding, on Rule 12(b)(6) motion, that court "[could not] conclude as a matter of law that a reasonable consumer could not be misled").

Perhaps not surprisingly, therefore, the only cases on which Post relies involve claims where fanciful names such as "Froot Loops" are alleged to convey that real fruit is in the food. However, "Honey Bunches of Oats" is not a fanciful name, certainly not in the sense that it should put a reasonable consumer on notice that it does not really mean what it says (especially given the graphical reinforcements on the packages). To the contrary, it is clear – as alleged - that Post branded, packaged, and marketed Honey Bunches of Oats to emphasize honey content (FAC, ¶¶ 22-25), a fact Post does not dispute.

Post also argues that in order to prevail Plaintiffs must specify how much honey the cereals should contain (Post Mem., 18–20), but this is a classic red herring. The precise amount of honey is irrelevant for the simple reason that this is not the issue of which Plaintiffs complain; rather, Plaintiffs' claims challenge Post's misrepresentation that honey is a main ingredient and the primary sweetener, when in fact it is neither.  Post's strategy of trying to make this case into something it is not must be categorically rebuffed.

Finally, Post argues reasonable consumers are obligated to read the fine-print ingredient lists on the side nutrition panels, but this directly contradicts settled law. As the Ninth Circuit declared in rejecting this argument:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Williams*, 552 F.3d at 939–40.  And recently, the Second Circuit announced it is in accord:

> [R]easonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging. We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.

*Mantikas*, 910 F.3d at 637, citing *Williams* (emphasis in original).  This Court should follow these well-reasoned, common sense decisions and deny Post's request for dismissal.[13]

## III.  SUSAN WRUBLEWSKI'S CONSUMER PROTECTION CLAIMS SATISFY RULE 9(b).

Post's contention that Susan Wrublewski has not provided sufficient detail about the Honey Bunches of Oats television commercials she saw is specious, for the simple reason that Post is not being sued for false or misleading television advertising.  To the contrary, Ms. Wrublewski's claims (like those of Ms. Lima) are based solely on Post's labeling and packaging of the products themselves – that she first became aware of them from television commercials (which also happened to emphasize the products' honey content) is completely incidental to the merits of her claims.  Thus, the complaint more than adequately informs Post "of the acts that form the basis for the claim" (*Hayduk v. Lanna*, 775 F. 2d 441, 443 (1st Cir. 1985)), and it is a far cry from the situation Rule 9(b) is designed to prevent - namely, "the filing of suits that simply hope to uncover relevant information during discovery." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 460 (2018), quoting *U.S. ex rel. Nargol v. DePuy Ortho.,. Inc.*, 865 F. 3d 29, 38 (1st Cir. 2017).

However, even if the content of Post's commercials is somehow relevant (beyond their depiction of the cereal box), the Rule 9(b) pleading burden is satisfied by Ms. Wrublewski's allegations that she saw a certain Post commercial on multiple occasions in mid-2017,[14] that the

---

[13] The Court should also decline Post's invitation to follow the opinion in *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012). The court's statement that "to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list" conflicts with the Ninth Circuit's holding in *Williams*.

[14] Contrary to Post's suggestion, pleading the actual dates of the viewings is unnecessary. *See Ray v. Spirit Airlines, Inc.*, 836 F. 3d 1340, 1351 n.2 [11th Cir. 2016) (consumers' fraud claims need only state "the dates *on or about* which they purchased tickets") (emphases added).

commercial showed the front of a Honey Bunches of Oats box matching the one set forth on page 6 of the Complaint, and that it was only after viewing an actual box with the same design as depicted in the commercial did she consume the cereal.

Accordingly, Susan Wrublewski's Chapter 93A claim satisfies Rule 9(b) and is not subject to dismissal.

## IV.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS ARE ADEQUATELY PLED.

Post surmises that because Honey Bunches of Oats packages do not promise a specific amount of honey, no warranty can be created as matter of law. This argument basically echoes Post's empty theory that no reasonable consumer would understand that the cereals contain a specific amount of honey. However, as explained, Plaintiffs' claims – including those alleging breach of warranty - arise from Post's misrepresentations and omissions as to *relative* amounts of honey in the products, that is, vis-à-vis sugar and other refined sweeteners, a point that is made throughout the complaint.[15] Although Post acknowledges this – describing Plaintiffs' claims as alleging that Post "[created] a warranty that [the] product was sweetened primarily, or significantly with honey" (Post Mem., 24) – it nonetheless seems committed to an approach that mischaracterizes Plaintiffs' actual allegations.

Turning to those allegations, it is apparent that the express warranty claims are adequately pled. Both Massachusetts and Minnesota law provide that "[a]ny description of the goods which

---

[15] For example:: (i) the "packaging of the Products convey the clear message is the primary sweetener or – at a minimum – that honey is a significant sweetener compared to sugar and other refined substances: (FAC, ¶26); (ii) "the Products are sweetened primarily – indeed, almost exclusively – with refined added sugars" (FAC, ¶29); (iii) "each variety of "Honey Bunches of Oats" contains only a miniscule amount of honey"(FAC, ¶30); and (iv) "[a] product branded "Honey Bunches of Oats" that pictorially conveys cereal being covered with honey and a bee in flight hardly means to a reasonable consumer that it is mostly sweetened with sugar and other refined substances or, moreover, that it contains only a miniscule amount of honey, but that is the reality.' FAC, ¶31.

is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." G.L. c. 106, § 2-313(1)(b); Minn. Stat. § 336.2-313(1)(b).  Plaintiffs assert that the labeling and packaging of Honey Bunches of Oats cereals convey to reasonable consumers that honey is their primary sweetener or, at a minimum, a significant sweetener compared to sugar and other refined sweeteners, which in turn means that the cereals are healthier and therefore worth paying more for.   These assertions, if proven, would clearly support a finding that Post's "description of the goods" promised a "specific result," even though that result is not defined with mathematical precision.[16]

The two cases on which Post relies are easily distinguished. In *Chuang v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017), plaintiff claimed that the manufacturer's statements describing snack products as "made with real fruit" or "made with real fruit and vegetables" conveyed that they "contain[ed] significant amounts of fruit." *Id.* at *1. However, as the court noted, these statements were literally true. Moreover, and just as significantly, the phrase "made with" implicitly disclaimed that any representation was being made about the amounts of fruit and vegetables present, and plaintiff did not allege that those amounts of were underrepresented vis-à-vis one or more other ingredients. So the situation in *Chuang* is completely unlike the present case, where Honey Bunches of Oats packages highlight "honey," there is no limiting or qualifying language such as "made with," and plaintiffs are not claiming that the cereals must contain a significant or even specific amount of honey – rather, only that their

---

[16] Post attempts to avoid this result by also pointing out that the phrase "a touch of honey" appears on the back panel of the cereal boxes under the heading "Tried and Tasty." As Plaintiffs point out, however,"[t]he heading "Tried and Tasty" hardly notifies the reasonable consumer that information about ingredients may follow . . . . and this single obscure phrase in no way ameliorates the falsity and deceptiveness of the Products' overall branding and packaging." FAC, ¶31 n.1. *See Mantikas,* 910 F. 3d at 637, and *Williams,* 552 F.3d at 939 – 940 (both holding that consumers need not look beyond representations made on the principal display panel for possible "fine print" clarifications).

honey content must be consistent with Post's representations.  Similarly, in *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007), the consumers alleged that defendant's beverage packaging conveyed the misimpression that the product contained significant amounts of real fruit.  However, in stark contrast to the present case, the packages all displayed "bold, capitalized print to indicate that the product in question is not fruit juice but merely flavored with concentrated fruit juices" and further "indicat[ed] the exact fruit content of the product." *Id.* at *4.

The decision in *Hadley v. Kellogg Sales Company*, 273 F. Supp.3d 1052 (N.D. Cal. 2017), highlights the problem with Post's analysis. There, plaintiffs alleged that a cereal manufacturer breached the express warranty provision of California's U.C.C. (which is identical to the cognate provisions of Massachusetts and Minnesota law) by portraying certain products as healthy even though they contained excessive amounts of sugar. Defendant sought dismissal for the reason  that "Plaintiff has failed to adequately plead an amount of excessive sugar that is unhealthy," but this argument was rejected and defendant's motion denied. *Id.* at 1093.  Again, that Plaintiffs here do not plead Post warranted a specific amount of honey is simply not relevant to the analysis.

As has been recognized, "the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell," an issue that "normally is one of fact." *Fahey v. R.J. Reynolds Tobacco Co.*, 1995 WL 809837, at *4 (Mass. Super. Ct. Feb. 12, 1995), quoting U.C.C. official comments 3 and 4. The express warranty claims set forth in the Complaint clearly and sufficiently allege that Post agreed to sell cereals that were predominantly sweetened with honey (and not sugar or other refined substances).  They must be adjudicated.[17]

---

[17] Post also challenges the express warranty claims with its oft-repeated argument that because it has complied with flavor labeling requirements it cannot be held liable for misrepresenting the relative amounts of sweeteners. For the reasons already discussed, Post again misses the mark. Moreover, as Plaintiffs have shown, even if *arguendo* Post has acted lawfully with regard to flavor labeling, this has no bearing on

## V.    DISMISSAL OF PLAINTIFFS' UNJUST ENRICHMENT CLAIMS IS UNWARRANTED.

Post urges the dismissal of Plaintiffs' unjust enrichment claims because Plaintiffs have an adequate remedy at law. However, the great weight of authority – including First Circuit cases decided under Massachusetts law – instructs that dismissal of an unjust enrichment claim at the pleading stage of litigation is inappropriate. *See, e.g.*, *Cooper v. Charter Communs. Entm'ts I, LLC*, 760 F.3d 103, 113 (1st Cir. 2014) (reversing dismissal of unjust enrichment claim since "it is generally permissible to pursue alternative remedies at the pleading stage"); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) ("it is accepted practice to pursue both [unjust enrichment and other claims] at the pleading stage"); *Duncan v. Nissan North America, Inc.*, 305 F. Supp. 3d 311, 323 (D. Mass. 2018) (refusing to dismiss unjust enrichment claim as alternative theory of liability to, *inter alia,* express warranty and chapter 93A claims); *Crane v. Sexy Hair Concepts, LLC*, 2017 WL 8728961, at *6 (D. Mass. Oct. 10, 2017) (unjust enrichment claim may proceed where Chapter 93A claim may not apply to entire class); *Zelby Holdings, Inc. v. Videogenix, Inc.*, 92 Mass. App. Ct. 86, 92-93 (2017) (dismissal of unjust enrichment claim "would be inappropriate . . . trial judge will be in a better position once the record is more developed to determine whether the unjust enrichment claim should survive"(citation and internal quotations omitted)). There are no special or extraordinary circumstances here that justify departure from this well-established approach, certainly none that Post has identified.

## VI.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF.

Although the consumer protection statutes of both Massachusetts and Minnesota authorize injunctive relief, [18]   Post argues Plaintiffs lack Article III standing to seek such  relief because they

---

whether its conduct is lawful with regard to sweeteners.

[18] *See* Chapter 93A, § 9; Minn. Stat. § 325F.69, Subd. 1. *See also* Minn. Stat. § 8.31, Subd.3a.

"do not face a real or immediate threat of future harm from the labeling" since "they know the . . . 'truth' about the amount of honey in the cereals, and they do not allege they will buy the cereals again." Post Mem., 26. The Court should reject both of these points.

With respect to Post's argument that Plaintiffs lack standing because they now have knowledge of the truth, the Court should follow the sound reasoning of the Ninth Circuit—the only appellate court to have squarely addressed the question—in the recent decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). In *Davidson*, the plaintiff alleged the defendant sold products by using deceptive representations on the packaging.  889 F.3d at 961. The plaintiff sued under consumer protection statutes similar to the ones at issue here*,* and defendant argued that plaintiff lacked standing to pursue injunctive relief because she was apprised of the fraud when she filed her complaint and so could no longer be injured by the same misconduct. The   Ninth Circuit reversed the allowance of defendant's motion to dismiss, explaining:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling. . . because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. *Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future*. . . .

*Id.* at 969–70 (emphasis added) (citations omitted). *See also Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *3 (N.D. Cal. Mar. 18, 2015) ("When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is *unclear* whether or not is true.").

Post is also wrong that Plaintiffs lack standing because they do not allege they will purchase Honey Bunches of Oats again.  However, "a Plaintiff in a consumer protection suit has standing

to seek injunctive relief *regardless of any promises to purchase the products in questions in the future.*" *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at \*5 (S.D.N.Y. Mar. 30, 2018) (emphasis added). And, as the Ninth Circuit ruled in *Davidson*, "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising."  889 F.3d at 961. *See also id.* at 967 ("We hold that [plaintiff] properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief."). As another court stated, "[a] rule that prevents [the named plaintiff] from seeking an injunction doesn't comport with traditional notions of standing; *it prevents the person most likely to be injured in the future from seeking redress.*" *Lilly*, 2015 WL 1248027 at \*4 (emphasis added).

Other recent decisions follow similar logic.  *See Diviacchi v. Speedway, LLC,* 109 F. Supp. 3d 379, 385 n.3 ("This Court is satisfied that [plaintiff] has standing to seek an injunction. . . . [I]t strikes the Court as odd to deny a plaintiff standing to vindicate [the plaintiff's statutory] rights just because she could [take measures to avoid the harm]."); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 541–42 (E.D.N.Y. 2017) ("To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in

false advertising cases, a wholly unrealistic result.").[19]

Moreover, Plaintiffs have standing to seek injunctive relief because their allegations reflect an actual and imminent threat of future harm.  In the past, Plaintiffs regularly desired to purchase cereal sweetened with honey and not sugar (*see* FAC, ¶¶40–41, 44), hence they can reasonably be expected to seek out such products on future trips to the grocery store. *Lilly*, 2015 WL 1248027, at *4 ("we know that [the consumer] values most highly the product as it was promised to be – because that's how she spent her money"). On encountering the prominent "honey" representations on the front of Honey Bunches of Oats packages, Plaintiffs could reasonably read them to indicate that Post had reformulated the product to be the honey-sweetened cereal they desire, but absent an injunction they would not be able to trust that Post had in fact done so.  As the *Lilly* court explained:

> The manufacturer may change or reconstitute its product in the future to conform to the representations on the label. In fact, the manufacturer has every reason to do this, since the market apparently values the very attribute the label promises. In that event, the product would actually become the product that our hypothetical consumer values most highly, and it would be labeled as such. But unless the manufacturer or seller has been enjoined from making the same misrepresentation, our hypothetical consumer won't know whether the label is accurate.

2015 WL 1248027, at *4. Thus, Plaintiffs' ongoing inability to rely on Post's labeling as to sweetener content is a future threat of harm that is sufficient to establish standing to seek injunctive relief. *Davison*, 889 F.3d at 967, 969–70.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–83 (2000) (holding that consumers had standing to seek injunction

---

[19] *See* also *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing . . . as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under . . . consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing. . . . [T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws.").

based, in part, on their regular past activities).[20]

Accordingly, Plaintiffs' injunctive relief claims should be allowed to proceed.

## VII.   THE COURT CAN AND SHOULD EXERCISE PERSONAL JURISDICTION OVER POST AS TO NON-MASSACHUSETTS CLASS MEMBERS AND CLAIMS.

Citing the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Post contends that this Court lacks personal jurisdiction over Post as to non-Massachusetts class members and claims.  However, Post stretches *Bristol-Myers* well beyond its limits.  First, the case was a mass tort action, not a class action.  Second, the case was brought in state court, and the Supreme Court expressly did not decide "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as a state court.  *Id.,* at 1784.  And, third, the case relied upon a "straightforward application" of "settled principles of personal jurisdiction" (*id.* at 1783), hence did not affect the law regarding jurisdiction in class actions.

As it must, Post concedes numerous courts have refused to apply *Bristol-Myers* to non-resident class members.  Indeed, in the most recent opinion on the issue, the court for the Northern District of Illinois denied defendant's motion to dismiss, on personal jurisdiction grounds, claims brought on behalf of a nationwide class.  In *Curran v. Bayer Healthcare LLC*, 2019 WL 398685, at *3 (N.D. Ill. Jan. 3, 2019). the court first noted the findings of a leading treatise that "most courts to address the issue nationwide have concluded that *Bristol-Myers* does not apply to class actions."[21]  It went on to explain that applying *Bristol-Myers* to class actions "would be to hold

---

[20] It is important to note Plaintiffs' future injury need not be identical to that which supports standing to seek monetary relief. As the Ninth Circuit recognized, "there is no reason prospective injunctive relief must always be premised on a realistic threat of a *similar injury* recurring . . . [a] sufficiently concrete prospective injury is sufficient." *Id.,* at 971 n.7 (emphasis added).

[21] 1 *McLaughlin on Class Actions,* § 2.44, n. 9 (15th ed.).

that '[a]lthough absent class members are *not* parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and venue, they *are* parties for purposes of personal jurisdiction over the defendant.'" *Id., quoting Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 820 (N.D. Ill. 2018). This grossly inconsistent result, the court remarked, "cannot be right." *Id.*

That Post's position is the minority one is understandable in view of the factors outlined in another recent opinion, *Hicks v. Houston Baptist University*, 2019 WL 96219 (E.D.N.C. Jan. 3, 2019).  First, Federal Rule of Civil Procedure 23 is an "exception to the rule that litigation is conducted by and on behalf of the individual named parties only." *Id.* at *6. Thus, absent class members are simply "not [parties] to the suit." *Id.* Second, class actions in federal court contain "due process safeguards that apply after the named plaintiff to the action has met his or her burden of establishing personal jurisdiction in the suit," whereas mass tort cases (like *Bristol*-Myers) lack similar safeguards. *Id.* Third, mass tort actions involve multiple suits with different plaintiffs that are joined for trial, whereas a class action is a single case where the court's jurisdiction over the defendant can be analyzed at the level of the suit. *Id.* And fourth, where defendant "is already subject to the specific personal jurisdiction of the court due to its dispute with plaintiff" (as is the case here) the application of Rule 23 "does not modify the substantive rights of defendant." *Id.*

Significantly, Post does not contend (much less explain why) it would be fundamentally unfair to make it defend a multi-state or nationwide class in this court, nor can it. Instead, placing form over substance, Post simply asks that the Court extend *Bristol-Myers* to federal class actions. However, this would have the effect of *creating* fundamental unfairness by forcing non-Massachusetts class members to file perhaps dozens of additional cases in other states, a scenario that would also burden the resources of the judiciary.  It is well-recognized that equitable and practical considerations such as these must guide the court in addressing jurisdictional issues in

the class action context:  As the Supreme Court has explained:

> Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation – to simplify litigation involving a large number of class members with similar claims - would be defeated. The rule that nonnamed class members cannot defeat complete diversity is likewise justified by the goals of class action litigation. Ease of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction.

*Devlin v. Scardellette*, 536 U.S. 1, 10 (2002). [22]

Accordingly, the Court should not dismiss non-Massachusetts class members, or any of their claims, from this case.

## Conclusion

For the foregoing reasons, the Court should deny Post's motion to dismiss in its entirety. Alternatively, if the Court believes any aspect of Post's motion should be granted for a reason that has not previously been the subject of amendment, Plaintiffs request leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[22] The pending consumer class action captioned *Elward v. Electrolux Home Products, Inc.*, No. 15-CV-0882 (N.D. Ill.), in which one of Plaintiffs' counsel is involved, illustrates the fallout (and what will likely be Post's "buyer's remorse") should the Court dismiss on *Bristol-Myers* grounds.  The case was filed as a multi-state class action, but Electrolux obtained the dismissal of certain non-Illinois plaintiffs based on precedent specific to that court.  Electrolux was then almost immediately confronted with multiple new class actions filed throughout the country by persons who were unnamed class members in the Illinois case. Faced with the daunting task of litigating these cases – each proceeding under different procedural rules and scheduling orders - Electrolux asked plaintiffs' counsel to consent to the consolidation of all cases in the Northern District of Illinois, the very court where the initial case commenced. The parties were required to negotiate and then file stay motions in seven jurisdictions *while leave was sought to re-file the same complaint Electrolux previously had dismissed as to non-Illinois consumers.* Thus, all that defendant's strategy produced was a significant delay in litigation and substantial burdens for the parties and multiple courts. This is exactly what will likely occur here should Post's argument succeed.

Respectfully submitted:

**ANITA S. LIMA**
**SUSAN WRUBLEWSKI**
**On behalf of themselves and all others similarly**
**situated**

By their attorneys:

*/s/Kenneth D. Quat*
BBO#408640
**QUAT LAW OFFICES**
929 Worcester Rd.
Framingham Massachusetts 01701
508-872-1261
ken@quatlaw.com

*/s/Michael R. Reese*
*/s/Carlos F. Ramirez*
REESE LLP
100 West 93rd St., 16th Floor
New York, New York 10025
212-643-0500
mreese@reesellp.com
cramirez@reesellp.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 5, 2019.

*/s/ Kenneth D. Quat*