UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANITA S. LIMA and SUSAN WRUBLEWSKI, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POST CONSUMER BRANDS, LLC,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 1:18-cv-12100-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

BURROUGHS, D.J.

This putative class action concerns the allegedly deceptive advertising and packaging of Defendant Post Consumer Brands LLC's ("Post") Honey Bunches of Oats cereal. Anita S. Lima and Susan Wrublewski ("Plaintiffs") claim that Post breached express warranties, violated numerous state consumer protection statutes, and unjustly enriched itself by creating the impression that Honey Bunches of Oats was primarily sweetened with honey, when it is in fact primarily sweetened with sugar, brown sugar, and corn syrup. See [ECF No. 25 ("Amended Complaint" or "Am. Compl.") ¶¶ 20–39, 57–103]. Presently before the Court is Post's motion to dismiss for failure to state a claim. [ECF No. 29]. For the reasons discussed herein, the motion to dismiss [ECF No. 29] is **<u>GRANTED</u>** and the Amended Complaint is dismissed with prejudice.

### I. BACKGROUND

The following facts are drawn from the Amended Complaint, the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See

Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents and product packaging referred to in the Amended Complaint. See Alvarez-Mauras v. Banco Popular of P.R., 919 F.3d 617, 622 (1st Cir. 2019).

Post is a Delaware limited liability company that is headquartered in Minnesota. Am. Compl. at 1, ¶ 3. It manufactures and sells several varieties of cereal under the registered trademark "Honey Bunches of Oats." U.S. Patent & Trademark Office, Honey Bunches of Oats, Registration No. 1575358, http://tmsearch.uspto.gov/. Plaintiffs are Massachusetts residents who purchased Honey Bunches of Oats with Almonds under the mistaken belief that honey was the cereal's exclusive or primary sweetener. Am. Compl. ¶¶ 40–45. Although the ingredient lists on the side or back of the packaging at issue listed honey as the fifth most prominent sweetener, Plaintiffs did not look at the ingredient lists and instead believed that the cereal was primarily sweetened with honey based on "several television commercials" that "emphasized the presence of honey" and Post's "branding and packaging." Id. ¶¶ 28, 42, 44. Specifically, Plaintiffs relied on the appearance of Honey Bunches of Oats with Almonds to-go cups and cereal boxes like those pictured below:






Id. ¶¶ 23–24; [ECF No. 30-2].[1]  As shown above, the Honey Bunches of Oats with Almonds

packaging includes an image of the sun, a wooden honey dipper dripping with honey, and the

outline of a bee trailing a broken line to indicate flight.  Am. Compl. ¶ 22.[2]

---

[1] The Amended Complaint also asserts claims on behalf of purchasers of: Honey Bunches of
Oats with Banana Bunches and Almonds; Honey Bunches of Oats, Crunchy Honey Roasted;
Honey Bunches of Oats with real Strawberries; Honey Bunches of Oats, Pecan and Maple
Brown Sugar; Honey Bunches of Oats, Chocolate; Honey Bunches of Oats with Cinnamon
Bunches; Honey Bunches of Oats Apple Caramel Crunch; Honey Bunches of Oats with Apples
& Cinnamon Bunches; Honey Bunches of Oats with Vanilla Bunches; Honey Bunches of Oats,
Whole Grain Honey Crunch; and Honey Bunches of Oats, Whole Grain Almond Crunch
("Honey Bunches of Oats" and in the class definitions, the "Products").  Because Plaintiffs assert
that they purchased Honey Bunches of Oats with Almonds, the Court reproduces only the
packaging and ingredient lists for that variety here.

[2] Nearly identical images with slightly different coloring and positioning appear on the other
varieties of Honey Bunches of Oats referred to in the Amended Complaint.  See [ECF No. 30-3
through 30-13].

The ingredient list on the side of Honey Bunches of Oats with Almonds cereal boxes discloses that honey is the least prominent of the sweetening ingredients used in the cereal:

**INGREDIENTS:** CORN, WHOLE GRAIN WHEAT, SUGAR, WHOLE GRAIN ROLLED OATS, BROWN SUGAR, ALMONDS, RICE, CANOLA OIL, WHEAT FLOUR, MALTED BARLEY FLOUR, CORN SYRUP, SALT, WHEY (FROM MILK), MALTED CORN AND BARLEY SYRUP, HONEY, CARAMEL COLOR, CINNAMON, NATURAL AND ARTIFICIAL FLAVOR, ANNATTO EXTRACT (COLOR). BHT ADDED TO PACKAGING MATERIAL TO PRESERVE PRODUCT FRESHNESS.
**VITAMINS AND MINERALS:** REDUCED IRON, NIACINAMIDE, VITAMIN B6, VITAMIN A PALMITATE, RIBOFLAVIN (VITAMIN B2), THIAMIN MONONITRATE (VITAMIN B1), ZINC OXIDE (SOURCE OF ZINC), FOLIC ACID, VITAMIN B12, VITAMIN D3.
**CONTAINS: WHEAT, ALMOND, MILK.**
POST CONSUMER BRANDS, LLC
20802 KENSINGTON BLVD.
LAKEVILLE, MN 55044, USA
©POST CONSUMER BRANDS, LLC

[ECF No. 30-2 at 2]; see also Am. Compl. ¶ 28.[3]  Plaintiffs do not dispute the accuracy of the ingredient list or claim that Post makes any objectively false representations about the amount of honey, and agree that the cereal contains some honey.  Am. Compl. ¶ 27.  They assert, however, that the cereal's honey content relative to other sweeteners is far less than Post's packaging and marketing led them to expect.  See id. ¶¶ 28, 41, 44; see also 21 C.F.R § 101.4 (generally requiring ingredients to be listed "in descending order of predominance by weight").

Surveys show that most consumers believe honey is "better for you than sugar" and that approximately half of consumers are willing to pay more for foods that are primarily sweetened with honey.  Am. Compl. ¶¶ 14–15.  As such, Plaintiffs claim that they suffered economic harm

---

[3] There are slight differences among the Honey Bunches of Oats varieties' ingredient lists, but honey is not among the most prominent sweeteners in any variety of Honey Bunches of Oats. See Am. Compl. ¶ 28.

when they purchased Honey Bunches of Oats with Almonds because its value was materially less than Post's marketing implied.  Id. ¶¶ 19, 41–45.

Plaintiffs filed this lawsuit on October 5, 2018 and their Amended Complaint on February 8, 2019.  [ECF No. 1]; Am. Compl.  The Amended Complaint brings claims on behalf of the following five putative classes of consumers who purchased some variety of Honey Bunches of Oats cereal:

- **The Nationwide Class.**  All persons who, on or after October 6, 2012, purchased the Products for personal, family, or household purposes in the United States.

- **The Injunctive Relief Class.**  All persons who, on or after October 6, 2012, purchased the Products for personal, family or household purposes in the United States.

- **The Multistate UDAP Class.**  All persons who, within the relevant limitations periods, purchased the Products for personal, family, or household purposes in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

- **The Multistate Warranty Class.**  All persons who, within the relevant limitations periods, purchased the products for personal, family, or household purposes in Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

- **The Massachusetts Class.**  All persons who, within the relevant limitations periods, purchased the products for personal, family, or household purposes in Massachusetts.

Am. Compl. ¶¶ 46–50.  Plaintiffs assert the following claims:

- Count I:  Violations of the Minnesota Consumer Fraud Act on behalf of the Plaintiffs and the Nationwide Class.

- Count II:  Breach of express warranty on behalf of Plaintiffs and the Nationwide Class.

- Count III:  Unjust enrichment on behalf of Plaintiffs and the Nationwide Class.

- Count IV:  Violations of specified states' consumer protection statutes on behalf of Plaintiffs and the Multistate UDAP Class.

- Count V:  Violations of specified states' express warranty statutes on behalf of Plaintiffs and the Multistate Warranty Class.

- Count VI:  Violations of the Massachusetts Consumer Protection Act, Massachusetts General Laws ch. 93A, on behalf of the Massachusetts Class.

- Count VII:  Breach of Massachusetts express warranty pursuant to Massachusetts General Laws ch. 105 on behalf of the Massachusetts Class.

Id. ¶¶ 57–103.

On February 22, 2019, Post filed the instant motion to dismiss.  [ECF No. 29].  On April 5, 2019, Plaintiffs timely opposed the motion.  [ECF No. 35].  On April 17, 2019, Post filed a reply in support of its motion, [ECF No. 39], and on May 3, 2019, Plaintiffs filed a sur-reply, [ECF No. 42].

## II.  STANDARD OF REVIEW

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).  The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is plausible on its face.'"  Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2), then quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679) (internal quotation marks omitted).

"[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each

allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir.

2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The

plausibility standard invites a two-step pavane."  Maddox, 732 F.3d at 80.  First, the Court "must

separate the complaint's factual allegations (which must be accepted as true) from its conclusory

legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676

F.3d 220, 224 (1st Cir. 2012)).  Secondly, the Court "must determine whether the remaining

factual content allows a 'reasonable inference that the defendant is liable for the misconduct

alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

### III.  DISCUSSION

Post argues that Plaintiffs' claims should be dismissed because: (1) the claims are

preempted under the Food and Drug Administration ("FDA") flavor labeling regulations; (2)

purchases of cereal in Massachusetts cannot be the basis for claims brought under Minnesota

law; (3) Plaintiffs failed to send a demand letter as required by Massachusetts General Laws ch.

93A; (4) Plaintiffs have not plausibly alleged that a reasonable consumer would be deceived by

the packaging at issue; (5) the warranty claims fail because the cereal packaging makes no

warranty as to the amount of honey; (6) the unjust enrichment claims fail because Plaintiffs have

an adequate legal remedy; and (7) Plaintiffs lack standing to seek injunctive relief because they

do not allege any intent to buy Honey Bunches of Oats in the future.  See [ECF No. 30].[4]  The

---

[4] Post also argues that the Amended Complaint provides insufficient detail about the television
advertisements it refers to and therefore fails to satisfy Federal Rule of Civil Procedure 9(b).
[ECF No. 30 at 12–14].  Plaintiffs' briefing has, however, clarified that "Ms. Wrublewski's
claims (like those of Ms. Lima) are based solely on Post's labeling and packaging of the products

Court first evaluates the Honey Bunches of Oats packaging under the applicable FDA regulations and then considers Plaintiffs' claims. For the reasons discussed herein, the Court concludes that Plaintiffs have not plausibly alleged any claim. In reaching that conclusion, the Court finds no inconsistency between the FDA flavor-labeling regulation and the state laws at issue. The Court is not required to reach, and does not decide, the issues concerning Massachusetts General Laws ch. 93A's requirement for a demand letter, choice of law, or standing to pursue injunctive relief.

### A.    Federal Labeling Requirement and Preemption

The federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990, is administered by the FDA and seeks to ensure nationwide near uniformity in how food is labeled. See 21 U.S.C. § 343-1(a)(3); Turek v. Gen. Mills, Inc., 662 F.3d 423, 426 (7th Cir. 2011) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy."). The FDCA contains an express preemption provision that prohibits states from promulgating food labeling requirements that are "not identical to the requirement[s] of" 21 U.S.C. § 343 where those labeling requirements apply. 21 U.S.C. § 343-1(a). "[A] state-law labeling requirement is not pre-empted . . . if it is equivalent to, and fully consistent with [federal] misbranding provisions." Kaufman v. CVS Caremark Corp., 836 F.3d 88, 96 (1st Cir. 2016) (finding that federal labeling requirement did not preempt state law where the labels at issue were "not in keeping with the requirements of

---

themselves – that she first became aware of them from television commercials (which also happened to emphasize the products' honey content) is completely incidental to the merits of her claims." [ECF No. 35 at 22].

FDCA"). Because the product labels at issue here are governed by 21 U.S.C. § 343 and the FDA's related regulations, Plaintiffs cannot maintain state law claims that would require additional labeling if the packaging at issue is fully compliant with the federal statutory scheme. See Kaufman, 836 F.3d at 96. There is no prohibition, however, on a state law claim based upon packaging that also violates the FDCA. See POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 116 (2014) ("It is unlikely that Congress intended the FDCA's protection of health and safety to result in less policing of misleading food and beverage labels than in competitive markets for other products."); Bates v. Dow Agrosciences LLC, 544 U.S. 431, 448 (2005) (express preemption of different requirements "does not preclude States from imposing different or additional *remedies*, but only different or additional *requirements*" (emphasis in original)).

B. **Misbranding Under the FDCA and the Reasonable Effect of Post's Honey Bunches of Oats Branding**

The FDCA provides that "[a] food shall be deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Allegations of misbranding that are based on misleading labeling or advertising must be evaluated taking "into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations . . . ." Id. § 321(n). Although the FDCA does not explicitly provide a standard for determining when branding is misleading, courts have generally evaluated allegations of unfair competition and violations of consumer protection statutes concerning food packaging governed by the FDCA under a reasonable consumer standard and have not found that standard necessarily inconsistent with FDA regulations. See, e.g., Dumont v. Reily Foods Co., No. 18-2055, 2019 WL 3729035, at *6 (1st Cir. Aug. 8, 2019) (concluding, where reasonable consumer standard applied, that plaintiffs'

claim under Massachusetts "chapter 93A [was] not impliedly preempted by federal law"); Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1195–96 (11th Cir. 2018) (holding that state law claims were preempted if viable because plaintiff did not dispute that the labeling at issue complied with federal regulations); Williams v. Gerber Prod. Co., 552 F.3d 934, 940 & n.4 (9th Cir. 2008) (applying reasonable consumer standard and declining to address preemption); In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017) (collecting cases). Here, the Court concludes that under the reasonable consumer standard, a consumer could not reasonably have concluded that Honey Bunches of Oats was primarily sweetened with honey based upon Post's use of the word "honey" and the related graphics appearing on the box.

Two FDA regulations inform the Court's evaluation of whether the Honey Bunches of Oats packaging was "false or misleading in any particular" within the meaning of 21 U.S.C. § 343(a) and could therefore offer a foundation for Plaintiffs' state law claims without running afoul of the FDCA. First, to the extent the use of the word "honey" and the packaging's graphics can be understood to be a reference to a flavor of the cereal, 21 C.F.R. § 101.22 promulgates specific requirements for the "labeling of spices, flavorings, colorings and chemical preservatives" including the manner in which a food's "primary recognizable flavor(s)" may be identified (e.g. "artificially flavored"). See 21 C.F.R. § 101.22(i). Second, to the extent the word "honey" and the graphics can be understood to refer only to an ingredient of the cereal, 21 C.F.R. § 101.18 provides general guidance on the "misbranding of food" under which, for example, branding a food with an ingredient that it does not contain could be considered misleading.

If Post's use of the word "honey" and the associated imagery reflects that honey is a primary recognizable flavor as well as an ingredient, then the FDA regulations clearly permit the use of the word "honey" and the associated imagery. The FDA regulation for the labeling of spices, flavorings, coloring, and chemical preservatives provides, in pertinent part:

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor . . . .

21 C.F.R. § 101.22(i). Where a "food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor," the name of the food "shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla' . . . ." Id. § 101.22(i)(1). Alternatively, where, although not alleged here, a food's characterizing flavor comes from flavoring rather than from the ingredient providing the flavor itself, the food must be labeled as "naturally" or "artificially" flavored, respectively. Id. § 101.22(i)(1)–(2).

Post argues that honey is a sweetener of its cereal, but also that the word "honey" in Honey Bunches of Oats describes one of the cereal's primary recognizable flavors. [ECF No. 30 at 6]. Plaintiffs respond that the FDA has long acknowledged that sweeteners are not flavors. [ECF No. 35 at 14]; see 38 Fed. Reg. 20,718, 20,720 (Aug. 2, 1973) ("Sweeteners are not spices or flavors, and when used as an ingredient in a food must be declared by common or usual name."). The 1973 regulation referenced by Plaintiffs reflects the fact that sweeteners, unlike natural or artificial flavoring ingredients, cannot be generically lumped together as "flavoring" but does not preclude sweeteners from serving as both a sweetener and a flavor. 38 Fed. Reg. at 20,720. In fact, courts have found that some sweeteners do also have a flavoring function. See, e.g., In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig., No. 16-CV-1442-PSG,

2017 WL 4676585, at *5 (C.D. Cal. Oct. 10, 2017) (construing claims as asserting claims based on the "presence of maple syrup in the context of flavoring, not sweetening").

The Amended Complaint itself implicitly acknowledges that honey has a distinctive flavor that is responsible for the honey taste of Honey Bunches of Oats. Am. Compl. ¶ 32. The Amended Complaint also asserts that the Plaintiffs thought honey was the exclusive or primary sweetener. Id. ¶¶ 41, 44. As such, Plaintiffs seemingly understand that honey is both a sweetener and a flavoring agent, yet they do not explain why they concluded that the word honey and the associated imagery necessarily meant that honey was the primary sweetener, rather than referring to the flavor of the cereal. See Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ("Every reasonable shopper knows that the devil is in the details."); McKinniss v. Gen. Mills, Inc., No. 07-CV-2521-GAF, 2007 WL 4762172, at *3–4 (C.D. Cal. Sept. 18, 2007) (dismissing claims that Berry Berry Kix and Fruity Cheerios were misleading names and holding that "an image of a fruit . . . is permitted to indicate that product's 'characterizing flavor' and is not an affirmation that the product contains any fruit at all." (citing 21 C.F.R. § 101.22(i))).[5]

---

[5] This case is unlike Dumont v. Reily Foods Co., No. 18-2055, 2019 WL 3729035 (1st Cir. Aug. 8, 2019), where the First Circuit found that plaintiffs had plausibly alleged a claim under Massachusetts General Laws ch. 93A based on a product sold as "Hazelnut Crème," "100% Arabica Coffee," and having a "Rich, Nutty Flavor" where the coffee contained no hazelnuts. 2019 WL 3729035, at *1. There, the plaintiffs plausibly alleged that the packaging was noncompliant with 21 C.F.R. § 101.22(i), an assertion the defendant did not contest. Id. at *4. Conversely, here, because the cereal contains honey, Plaintiffs do not contend that the packaging violates 21 C.F.R. § 101.22(i) and are instead forced to contend that 21 C.F.R. § 101.22(i) is either inapplicable because honey, though an ingredient, is not among the cereal's primary recognizable flavors or alternatively that the regulation "has no preemptive effect." See [ECF No. 35 at 14].

Plaintiffs also assert, however, that some varieties of Honey Bunches of Oats have other ingredients with more distinctive flavor characteristics than honey, such as almonds, that are present in greater quantities, therefore presumably contributing more to the cereal's flavor profile than honey. Am. Compl. ¶ 32 & n.2. But that stops short of claiming that honey is not among Honey Bunches of Oats' primary recognizable flavors.[6] Further, the applicable regulations allow foods to have multiple primary recognizable flavors. See 21 C.F.R. § 101.22(i) (regulating "representations with respect to the primary recognizable *flavor(s)*, by word, vignette, e.g., depiction of a fruit, or other means" (emphasis added)). Given that the FDA regulations on flavors permit primary recognizable flavors to be identified by "word, vignette, . . . or other means" and specify that the "common or usual name of the characterizing flavor" shall accompany the name of a food where that flavoring product is the source of the flavor, see id., the Court concludes that, where honey is a flavor as well as a sweetener, Plaintiffs have not plausibly alleged that Post's use of the word "honey" and the images of a sun, bee, and honey dipper is "false or misleading in any particular" within the meaning of 21 U.S.C. § 343(a), contra Red v. Kraft Foods, Inc., 754 F. Supp. 2d 1137, 1143 (C.D. Cal. 2010) (declining to construe use of word honey and a prominent image of flowing honey "as mere representations of 'characterizing flavor'").[7]

---

[6] Although the Amended Complaint asserts that "[t]he branding and packaging of 'Honey Bunches of Oats' cereals is not accurate or justifiable on the basis that honey is the primary or characterizing flavor," Am. Compl. ¶ 32, that mixed assertion of law and fact incorrectly presumes that a food can have only one primary recognizable flavor and does not explicitly contend that the cereal does not taste like honey. The regulation seemingly allows multiple primarily recognizable flavors to contribute to a food's characterizing flavor. See 21 C.F.R. § 101.22(i).

[7] Red v. Kraft Foods, Inc., 754 F. Supp. 2d 1137 (C.D. Cal. 2010), acknowledges that the issue of what constitutes a characterizing flavor presents a "complicated issue" because of the inherent uncertainty over who gets to decide what constitutes a characterizing flavor. 754 F. Supp. 2d at 1143.

Assuming *arguendo* that the Amended Complaint plausibly alleged that Post's use of the word "honey" and the associated imagery refer to an ingredient that is not among the cereal's primary recognizable flavors, the FDA regulation for the "misbranding of food" would provide the most pertinent guidance. See 21 C.F.R. § 101.18(b). That regulation provides that a label "which contains two or more ingredients may be misleading by reason . . . [of] a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." Id. As such, food packaging that indicates an ingredient may mislead consumers, in at least some circumstances, even where a careful inspection of the ingredient list would dispel consumers of their misbelief. See Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018) (holding that listing enriched white flour as the first and most prominent ingredient on the side of Cheez-Its boxes did not cure the deceptive nature of the large "WHOLE GRAIN" text on the front panel, even though the Cheez-Its contained the amount of whole grain stated on the front panel); Williams, 552 F.3d at 939 ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); Ackerman v. Coca-Cola Co., No. 09-CV-395-JG, 2010 WL 2925955, at *13 (E.D.N.Y. July 21, 2010) (finding "vitaminwater" potentially misleading where it was promoted with phrases such as "vitamins + water = all you need" and "vitamin enhanced water beverage" where drink was sweetened with sugar).

A brand name that offers some indication of a product's contents is not, however, necessarily required to list out every ingredient. See Coe v. Gen. Mills, Inc., No. 15-CV-5112-TEH, 2016 WL 4208287, at *2 (N.D. Cal. Aug. 10, 2016) ("Cheerios is not an 'ingredient,' and the name 'Cheerios Protein' is not regulated by 21 C.F.R. § 101.18(b)."). Additionally,

consumers who are presented with images or information that would be recognized as ambiguous by a reasonable consumer are generally expected to resolve such an ambiguity by referring to other information on a product's packaging. See In re 100% Grated Parmesan Cheese, 275 F. Supp. 3d at 922; Workman, 141 F. Supp. 3d at 1035 ("[A]ny potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA."); Hairston v. S. Beach Bev. Co., No. 12-CV-1429-JFW, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("[T]o the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of [the product]."). "In other words, while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely on it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight." In re 100% Grated Parmesan Cheese, 275 F. Supp. 3d at 923 (citations omitted).

As such, even if the Amended Complaint alleged that honey is not among Honey Bunches of Oats' primary recognizable flavors, the Court would still conclude that the Amended Complaint does not plausibly allege that the packaging was misleading in any particular. The packaging referenced in the Amended Complaint makes no objective representation about the amount of honey, leaving the cereal's accurate list of ingredients as the only unambiguous representation of the amount of honey relative to other sweeteners.[8] See Am. Compl. ¶¶ 28, 31. This case is unlike those where the packaging misled consumers by inaccurately suggesting a

---

[8] The back of Honey Bunches of Oats with Almonds cereal boxes also contains a paragraph that advertises Honey Bunches of Oats Honey Roasted and describes that variety as "our original flavor with a perfect combination of crispy flakes and tasty, crunchy oat clusters with a touch of honey." See [ECF No. 30-2].

particular amount of a key ingredient.  See, e.g., Reynolds v. Wal-Mart Stores, Inc., No. 4:14-CV-381-MW, 2015 WL 1879615, at *5 (N.D. Fla. Apr. 23, 2015) (finding a misleading representation where "[t]he use of '100%' in the same type size as 'Cranberry Pomegranate' implies that the product is entirely cranberry and pomegranate juice, which is apparently inaccurate").  Nor is this a case where the product is entirely devoid of a food or ingredient that is part of its name.  See, e.g., Dumont, 2019 WL 3729035, at *3 (concluding that marketing coffee as "Hazelnut Crème" was plausibly alleged to mislead a reasonable consumer where the coffee contained no hazelnuts); Williams, 552 F.3d at 938–39 (concluding that marketing product as "fruit juice snacks" could plausibly mislead a reasonable consumer into believing that the snacks contained fruit juice).  Even a reasonable consumer who presumed honey to be a sweetener rather than a flavor would see that Honey Bunches of Oats did not claim to be sweetened exclusively or primarily with honey and therefore would have recognized that the cereal might be sweetened with some honey, but also with other sweeteners.  Assuming such a consumer cared about how the cereal was sweetened, he or she would then have checked the ingredient list and discovered that honey, although a sweetener, was not the most prominent.

Therefore, regardless of whether honey is a primary recognizable flavor of Honey Bunches of Oats, the Court concludes that the packaging at issue was consistent with the FDCA and the Amended Complaint does not plausibly allege that it would have confused a reasonable consumer, particularly where Post made no unambiguous misrepresentation and provided an accurate ingredient list.

### C.    FDA Regulation of Common or Usual Name for Foods

In addition to claiming that Post misbranded Honey Bunch of Oats pursuant to 21 U.S.C. § 343(a), Plaintiffs asserts that Post's marketing ran afoul of the FDA regulation concerning the

common or usual name for nonstandardized foods.  Am. Compl. ¶¶ 35–37 (citing 21 C.F.R.

§102.5(b)).  That regulation provides that "[t]he common or usual name of a food, which may be

a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the

basic nature of the food or its characterizing properties or ingredients."  21 C.F.R. § 102.5(a).

The common or usual name of a food may be part of a brand name, but the name under which a

food is sold need not disclose every distinguishing characteristic.  See In re Quaker Oats Maple

& Brown Sugar, 2018 WL 1616053, at *4 ("The 'basic nature' of [Quaker Oats Maple & Brown

Sugar Instant Oatmeal] is *not* maple syrup or maple sugar, but is instead instant oatmeal . . . ."

(emphasis in original)); Cardona v. Target Corp., No. 12-CV-1148-GHK, 2013 WL 1181963, at

*13 (C.D. Cal. Mar. 20, 2013) ("[T]he 'common and usual name' of honey is honey, irrespective

of pollen content."); Regan v. Sioux Honey Ass'n Co-op., 921 F. Supp. 2d 938, 945 (E.D. Wis.

2013) ("Pollen is not a 'characterizing ingredient or component' because, as the Court already

explained, honey is honey, even in the absence of pollen.").  For foods that have characterizing

ingredients or compounds, the regulations provide:

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

21 C.F.R. § 102.5(b).

The FDA regulations do not prescribe a common name or "standard identity" for

breakfast cereal, as they do for some other foods, such as "yogurt," see 21 C.F.R. § 131.200, but

the Court agrees with Post that the basic character of Honey Bunches of Oats cereal is cereal, cf.

In re Quaker Oats Maple & Brown Sugar, 2018 WL 1616053, at *4; Coe v. Gen. Mills, Inc., No.

15-CV-5112-TEH, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016) ("21 C.F.R. § 102.5(c)

does not apply to 'Cheerios Protein' because that is not the product's common or usual name."). Although the Amended Complaint at least suggests that honey is among the recognizable flavors of Honey Bunches of Oats, that does not render honey a characterizing ingredient within the meaning of 21 C.F.R. § 102.5(b) because honey is not a characterizing ingredient of cereals generally. The regulations therefore do not require Post to disclose the proportion of honey in Honey Bunches of Oats.

### D.    Choice of Law

Post argues that the Court must determine whether Minnesota or Massachusetts law applies. [ECF No. 30 at 14]. "The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions . . . ." Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). The sole conflict identified by Post is that the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, does not require a pre-suit demand letter, whereas a claim brought under Massachusetts General Laws ch. 93A, § 9 ordinarily requires that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws ch. 93A, § 9(3).[9] The Massachusetts requirement that a plaintiff send a pre-suit demand letter does not apply, however, where "the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." Id.

---

[9] Post asserts that "other substantive differences exist between Minnesota and Massachusetts law that may become material if the case progresses. Post preserves its ability to raise those differences at the appropriate time." [ECF No. 30 at 14 n.10].

The parties dispute whether Post maintains a place of business or keeps assets in the

Commonwealth.  Post relies heavily on the Form 10-K for the fiscal year ending September 30,

2018 that its corporate parent, Post Holdings, Inc., filed with the Securities and Exchange

Commission to argue that it maintains a place of business and owns property in Massachusetts.

See [ECF No. 30-15 at 23 ("Post Consumer Brands has . . . [a] manufacturing facilit[y] located

in . . . Clinton, Massachusetts . . . .")].[10]  In pertinent part, that Form 10-K states:

> In February 2018, the Company announced its plan to close its cereal
> manufacturing facility in Clinton, Massachusetts, which manufactures certain
> Weetabix Group products distributed in North America.  The transfer of production
> capabilities to other Post Consumer Brands facilities and the closure of the facility
> is expected to be completed by September 2019.

Post Holdings, Inc., Annual Report (Form 10-K), at 66 (Nov. 16, 2018), https://www.sec.gov/

Archives/edgar/data/1530950/000153095018000238/postfy201810-k.htm.  Post acknowledges

that it owns, or owned, the Clinton manufacturing facility indirectly through its subsidiary,

Weetabix North America, which is, or at least was, the "record owner of the Clinton, MA

manufacturing plant."  [ECF No. 39 at 5].  Because it is unclear whether Post currently keeps a

place of business in the Commonwealth, the Court cannot conclude that the Commonwealth's

demand letter requirement applies to Post at this stage, even assuming that Massachusetts law

applies.

Although it is likely that Massachusetts law applies to Plaintiffs' claims because they are

Massachusetts residents who purchased the cereal for private use, the Amended Complaint does

not specify where Plaintiffs purchased the cereal.  See Am. Compl. ¶¶ 40–45; Reicher, 360 F.3d

at 5 (explaining that federal district courts apply the choice of law rules of the forum state and

---

[10] See also Post Holdings, Inc. Form 10-K, U.S. Sec. & Exch. Comm'n, Edgar Company Filings, https://www.sec.gov/Archives/edgar/data/1530950/000153095018000238/ postfy201810-k.htm.

that Massachusetts employs a functional choice of law approach). Post does not assert that there are any meaningful conflicts between Minnesota and Massachusetts law other than the demand letter requirement, see [ECF No. 30 at 14 & n.10], and in light of the limited facts available at this stage of the litigation and the absence of a meaningful difference in the applicable Minnesota and Massachusetts laws for present purposes, the Court declines to hold whether Massachusetts or Minnesota law applies.

### E. Counts I, IV, and VI: Violations of the Minnesota Consumer Fraud Act, Massachusetts Consumer Protection Act, and Other State Consumer Protection Statutes

Plaintiffs correctly contend that under either Minnesota or Massachusetts law, a reasonable consumer standard applies here. [ECF No. 35 at 19]; see Aspinall v. Philip Morris Co., 813 N.E.2d 476, 487 (Mass. 2004) ("The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information."); Curtis v. Philip Morris Cos., No. PI 01-018042, 2004 WL 2776228, at *4 (Minn. Dist. Ct. Nov. 29, 2004) (applying reasonable consumer standard to claim under Minnesota Consumer Fraud Act); see also In re 100% Grated Parmesan Cheese, 275 F. Supp. 3d at 920 (discussing various state consumer protection statutes and finding that "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer"). Massachusetts General Laws ch. 93A, § 2 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Likewise, the Minnesota Consumer Fraud Act prohibits the "use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69 Subd. 1. An advertisement is deceptive when it "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." Aspinall, 813 N.E.2d at 488; see e.g., Dumont, 2019 WL

3729035, at *3 (holding that where "Hazelnut Crème" coffee contains no hazelnuts, the relevant "question under Massachusetts law is whether the label had the capacity to mislead consumers, acting reasonably under the circumstances, to believe that the coffee contained some hazelnut").

Although it is a relatively "rare situation in which granting a motion to dismiss is appropriate" under the "reasonable consumer" standard, "the primary evidence in a false advertising case is the advertising itself." Williams, 552 F.3d at 938–39. "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013). But see Dumont, 2019 WL 3729035, at *4 ("[W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead' reasonably acting, hazelnut-loving consumers."). A literal truth on product packaging may deceive a reasonable consumer in some circumstances, see, e.g., Mantikas, 910 F.3d at 638, but for the reasons discussed supra at section III.B, Plaintiffs have not plausibly alleged that this is such a case, cf. Videtto v. Kellogg USA, No. 08-CV-1324-MCE, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (holding that brand name "Froot Loops" could not reasonably be interpreted to imply that a cereal is made from actual fruit); McKinnis v. Kellogg USA, No. 07-CV-2611-ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (similar). Further, while a court must defer to a jury's expertise on what a would deceive a reasonable consumer in a close case, the Court agrees wholeheartedly with Judge Lynch's observation in Dumont v. Reily Foods Co., No. 18-2055, 2019 WL 3729035, at *9 (1st Cir. Aug. 8, 2019) (Lynch, J., dissenting), that "[i]mposing on food producers the costs of defending meritless labeling litigation will have the

effect of driving up prices for consumers."[11]  This case is not one that requires resolution by a jury.

Plaintiffs have not plausibly alleged that the use of "Honey" in Honey Bunches of Oats and the associated imagery would have misled a reasonable consumer into believing that the cereal was primarily or exclusively sweetened with honey, and Counts I, IV, and VI are therefore DISMISSED.

### F.    Counts II, V, and VII: Breach of Express Warranty and Violations of Express Warranty Statutes

In order to assert a viable claim for the breach of an express warranty, a plaintiff must plausibly allege that an express promise was made in connection with a transaction.  See Jackson v. Johnson & Johnson & Janssen Pharm., Inc., 330 F. Supp. 3d 616, 627 (D. Mass. 2018) ("[T]he plaintiff must demonstrate that the defendant promised a specific result."); see also Mass. Gen. Laws ch. 106, § 2-313(1)(b) (express warranties may be created by an "affirmation of fact or promise," a "description of the goods," or a "sample or model which is made part of the basis of the bargain"); Minn. Stat. § 336.2-313(1)(b) (same).  For example, an assertion that a product was "made with real fruit and vegetables" might support a breach of warranty claim if the statement was allegedly false.  See Chuang v. Dr. Pepper Snapple Grp., No. 17-CV-1875-MWF, 2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017) (finding no breach of any express warranty because products were "made with 'Real FRUIT and VEGETABLE juice'" as they claimed).  Here, especially where the cereal both contains and tastes like honey, neither the use of the Honey Bunches of Oats brand name nor the imagery on the packaging provides the sort of

---

[11] The Court emphasizes, again, that it does not find Dumont, 2019 WL 3729035, apposite here. See supra note 5.  In that case, the label at issue violated FDA regulations.  As such, damages and perhaps injunctive relief for the Massachusetts General Laws ch. 93A violation would not necessarily have implied requirements beyond those supplied by the FDCA.  See 21 C.F.R. § 101.22(i).  The same cannot be said here.

express promise that is required for a breach of warranty claim. Therefore, Counts II, V, and VII are <u>DISMISSED</u>.

### G. Count III: Unjust Enrichment

Unjust enrichment is an equitable doctrine that entitles a plaintiff to restitution for any benefit knowingly retained by the defendant at the plaintiff's expense when it would be inequitable for the defendant to retain that benefit without paying the plaintiff. <u>See</u> <u>Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.</u>, 552 F.3d 47, 57 (1st Cir. 2009). It suffices to say that if Plaintiffs had in fact been reasonably misled by Post's Honey Bunches of Oats packaging, they would have no shortage of contractual and statutory remedies. <u>See</u> <u>Drobnak v. Andersen Corp.</u>, 561 F.3d 778, 787 (8th Cir. 2009) ("Equitable remedies are available only when no adequate legal remedy exists."). Count III is therefore <u>DISMISSED</u>.

## IV. CONCLUSION

Accordingly, the motion to dismiss [ECF No. 29] is **<u>GRANTED</u>**. All counts are dismissed. Because the complaint has already been amended once and the Court concludes that further amendment would be futile, the dismissal is with prejudice.

**SO ORDERED.**

August 13, 2019

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE