UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANITA S. LIMA and SUSAN WRUBLEWKSI**, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**POST CONSUMER BRANDS, LLC**,<br><br>Defendant, | Civil No. 1:18-CV-12100-ADB |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DISMISSING THE FIRST AMENDED COMPLAINT AND DENYING LEAVE TO REPLEAD**

Plaintiffs Anita S. Lima and Susan Wrublewski move for reconsideration of the Court's memorandum and order of August 13, 2019 (the "Order") granting Defendant's motion to dismiss and dismissing all counts of the first amended complaint ("FAC"). Reconsideration is warranted "[when] the rendering court committed a manifest error of law." *Merit Const. Alliance v. City of Quincy,* 759 F. 3d 122, 132 (1st Cir. 2014) (citation omitted). As explained below, such error occurred here.[1]

In the alternative, if the Court does not reconsider and reverse its dismissal of the FAC, the Court should reconsider its denial of Plaintiffs' request to file an amended complaint. After receipt of the Order, Plaintiffs' counsel commissioned a survey of over 400 consumers ("Consumer Survey"). The results of the survey contradict the Court's factual findings that reasonable

---

[1] In this motion Plaintiffs seek reconsideration of the Court's dismissal of all claims except that for unjust enrichment (count III of the FAC). That reconsideration is not being sought as to this claim should not be construed as an admission that Plaintiffs believe its dismissal was proper.

1

consumers would not view Post's packaging in the manner alleged by Plaintiffs.  Plaintiffs should be permitted to file an amended complaint that sets forth relevant data from the Consumer Survey.

**Argument**

**I. THE COURT COMMITTED MANIFEST ERRORS OF LAW BY CONCLUDING, CONTRARY TO FIRST CIRCUIT PRECEDENT, THAT: (i) NO REASONABLE CONSUMER COULD VIEW POST'S LABELING AS MEANING HONEY WAS THE CEREAL'S PREDOMINANT SWEETENER, AND (ii) ANY REASONABLE CONSUMER WOULD CONSULT THE FINE-PRINT INGREDIENT LIST TO DETERMINE THE RELATIVE AMOUNT OF HONEY.**

The Court dismissed counts I, IV, and VI of the FAC on the basis that Plaintiffs did not plausibly allege they believed honey to be the primary sweetener in Post's Honey Bunches of Oats cereals, stating: "they do not explain why they concluded that the word honey and the associated imagery necessarily meant that honey was the primary sweetener, rather than referring to the flavor of the cereal." Order, p. 12.  But the distinction (as urged by Post) between honey as a sweetener and honey as a flavor is a patently false one.  Given that honey is undeniably a sweetener – as the FDA and the Court both recognize – Plaintiffs have no burden to explain, at least not at the pleading stage of the case, why they perceived it as such or, alternatively, why they may have perceived it as *both* a sweetener and a flavor.[2]  To be sure, since honey can be both a sweetener

---

[2] Whether Honey Bunches of Oats actually has a honey flavor is irrelevant to the question of whether Plaintiffs could reasonably view honey as a sweetener of the product based on Post's packaging, because even if Post complied with the FDA's flavor labeling regulation this would not mean its packaging was lawful in other respects. 21 U.S.C. §343(a)(1). Nonetheless, it is troubling that the Order mischaracterized the FAC as agreeing with Post's position that the cereal is honey-flavored, stating, "the Amended Complaint itself implicitly acknowledges that honey has a distinctive flavor that is responsible for the honey taste of Honey Bunches of Oats." Order, p. 12.  To the contrary, the only paragraph of the FAC cited by the Court alleges just the opposite:

> The branding and packaging of "Honey Bunches of Oats" cereals is not accurate or justifiable on the basis that honey is the primary or characterizing flavor.  Each of the Products contains flavoring ingredients in much greater quantities than honey, and many of these ingredients – such as molasses, brown sugar, nuts, and dried fruit – have flavor characteristics that are far more distinctive than honey.  Indeed, even a cereal variety that doubles-down on honey – "Honey Bunches of Oats, Crunchy Honey Roasted" – contains a number of flavoring ingredients that are present in

and a flavor, it is *ipso facto* reasonable for a consumer to view it either way, or both ways, at least in the absence of countervailing evidence (none of which is present here).  In sum, there is nothing Plaintiffs should have to explain beyond what they have already alleged – namely, that Post's prominent use of the word "honey" and "honey" imagery caused them to believe, incorrectly, that honey is a significant sweetener in the cereal vis-à-vis sugar and other refined sweeteners.  The Court thus committed a manifest error of law by imposing on Plaintiffs a pleading requirement that goes well beyond that of Fed. R. Civ. P. 8(a).

Moreover, whether it was reasonable for Plaintiffs to view Post's labeling in the manner alleged is not an issue for the Court to decide.  The Court's manifest error is confirmed by the recent ruling by the 1st Circuit Court of Appeals in *Dumont v. Reily Foods Co.,* ___ F.3d ___, 2019 WL 3729035 (1st Cir. Aug. 8, 2019).  There, the defendant manufacturer was alleged to have violated M.G.L. c. 93A by labeling a product as "Hazelnut Crème" coffee where it contained no actual hazelnut.  As here, the manufacturer persuaded the district judge to dismiss the case on the basis that plaintiff did not plausibly allege that a reasonable consumer would be misled by the product labeling, but the Court of Appeals reversed.  While acknowledging that defendant's position was not unreasonable, the Court understood that it was not for the judiciary to say, as a matter of law, that plaintiff's position *was* unreasonable:

> The question is one of fact. As with any question of fact, our role is limited to defining the outer boundaries of its answer – i.e., the point at which a juror could reasonably find only one way . . . we think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead' reasonably acting, hazelnut-loving consumers.

---

greater proportions than honey

FAC, ¶32. Moreover, there is no other language in the FAC that even remotely suggests Plaintiffs believe Honey Bunches of Oats tastes like honey.

*Id.,* at *4.

The facts of the present case favor Plaintiffs even more strongly than do the facts in *Dumont*. There, the packaging contained a prominent disclaimer that arguably put a reasonable consumer on notice that the name "Hazelnut Crème" could refer to hazelnut flavoring and not actual hazelnuts. Here, by contrast, there is nothing in Honey Bunches of Oats packaging that would tilt a consumer toward viewing honey as a flavor rather than as a sweetener. In sum, paraphrasing *Dumont,* it is for a jury to decide whether Post's labeling "has the capacity to mislead reasonably acting, [sweetener-conscious] consumers." The Court's acceptance of Post's view of its own labeling as the only plausible one was manifestly erroneous.

The Order opines (at p. 12, n. 5) that *Dumont* is distinguishable because the manufacturer did not dispute it violated a federal regulation, but the Court of Appeals addressed this issue solely in the context of analyzing the manufacturer's preemption defense, not with respect to whether the regulatory violation made Plaintiff's c. 93A claim more plausible. The Court concluded, simply, that under preemption principles liability could not be predicated on the regulatory violation, but rather only on whether the challenged mislabeling "'has the capacity . . . to deceive or mislead reasonable consumers' in violation of chapter 93A;" furthermore, when the Court made this statement *it had already determined that plaintiff's allegation to this effect was plausible. Id.,* at *5. Consequently, *Dumont* is directly on point and requires denial of Post's motion to dismiss.

Finally, the Order goes on to state that Post's honey labeling "would be recognized as ambiguous by a reasonable consumer," thus giving rise to an obligation to read the fine-print ingredient list:

> [e]ven a reasonable consumer who presumed honey to be a sweetener rather than a flavor would see that HBO did not claim to be sweetened exclusively or primarily with honey and therefore would have recognized that the cereal might be sweetened with some honey, but also with other sweeteners. Assum-

4

> ing such a consumer cared about how the cereal was sweetened, he or she would then have checked the ingredient list and discovered that honey, although a sweetener, was not the most prominent.

Order, p. 16. This conclusion is manifestly erroneous as an unjustified finding of fact since it presupposes the falsity (or unreasonableness) of Plaintiffs' allegation that Post's labeling conveyed the *unambiguous* message that honey was the primary sweetener. *Dumont* is again on point and shows the Court's error. There, the packaging contained no specific language or imagery indicating the presence of actual hazelnuts; indeed, since it had no hazelnut graphics and contained a reference to added flavoring, the packaging was far less suggestive of actual hazelnuts than is Post's packaging suggestive of the predominance of honey. Nonetheless, the Court of Appeals did not find any ambiguity nor did it rule, as a matter of law, that it was unreasonable for Plaintiffs to view the packaging as indicating the presence of hazelnuts without checking the ingredient list:

> One might presume that a reasonable consumer who, like Dumont, cared whether the coffee she intended to purchase contain real hazelnut would check the list of ingredients. On the other hand, perhaps a reasonable consumer would find in the product name sufficient assurance so as to see no need to search the fine print on the back of the package, much like one might easily buy a hazelnut cake without studying the ingredients list to confirm that the cake actually contains some hazelnut.

*Id.*, at *3. Similarly, the fact that Post's labeling does not explicitly state that Honey Bunches of Oats is sweetened predominantly with honey does not render it ambiguous, does not render Plaintiffs' allegations unreasonable, and does not impose on Plaintiffs - as a matter of law - an obligation to consult the ingredient list. Moreover, even if *arguendo* the distinction between honey-as-flavor and honey-as-sweetener has some validity and can be said to create some ambiguity, the ambiguity could not be resolved by the Honey Bunches of Oats ingredient list, which does not describe honey as being in either category.

Accordingly, the Court should reconsider its decision to dismiss Counts I, IV, and VI and reinstate those claims.

## II. THE COURT COMMITTED A MANIFEST ERROR OF LAW BY CONCLUDING THAT A JURY COULD NOT FIND THAT POST'S PACKAGING CREATED AN EXPRESS WARRANTY THAT THE CEREAL'S PREDOMINANT SWEETENER WAS HONEY.

In dismissing Plaintiffs' express warranty claims (counts II, V, and VII), the Court held as a matter of law that Post did not promise consumers that honey was the predominant sweetener in Honey Bunches of Oats cereal because its packaging did not make a categorical statement to that effect. Order, p. 22. This was plain error. Although the Uniform Commercial Code (as adopted in Minnesota, Massachusetts, and elsewhere) provides that an express warranty can be created by an "affirmation of fact or promise made by the seller," it makes equally clear that such a warranty can arise from "*any description of the goods* which is made part of the basis of the bargain." Minn. Stat. § 336,.2-313(1)(b); M.G.L. c. 106, § 2-313 (1)(b) (emphases supplied). Moreover, authorities on the Code understand that some or all of a product's description "need not be in words." *Uniform Commercial Code Comment*, note 5. Here, Post described its cereal as "*Honey* Bunches of Oats" and augmented this description with images of a honey dipper dripping with honey and a bee in flight. A jury could well find that this branding and labeling promised the specific result that the cereal was sweetened predominantly with honey (relative to sugar and other refined sweeteners). Accordingly, it was manifestly erroneous for the Court to dismiss Plaintiffs' express warranty claims.[3]

---

[3] The Court says its conclusion is reinforced by the fact that the cereal "tastes like honey." Order, p. 12. However, as explained, there is no basis for such a finding and the cereal's taste is irrelevant to Plaintiffs' claims.

### III. **IN THE ALTERNATIVE, THE COURT SHOULD RECONSIDER ITS DENIAL OF PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD.**

Plaintiffs believe their claims were sufficiently pled and that the Court committed manifest errors of law in dismissing them.  Nonetheless, should the Court not see fit to reconsider its dismissal order, Plaintiffs request in the alternative that the Court reconsider its denial of their request for leave to amend.[4]

After reviewing the Order, Plaintiffs' counsel commissioned a survey of over 400 consumers regarding certain of the Court's factual findings and conclusions of law.  The Consumer Survey depicted the same front panel of "Honey Bunches of Oats with Crispy Almonds" as that set forth in the FAC, and posed the following question: "Based upon this packaging, what do you believe to be the primary sweetener of the cereal?"  Of the 419 respondents, 68% (288 consumers) stated "honey." This data directly contradicts the Court's ruling that, as a matter of law, "a consumer could not reasonably have concluded that Honey Bunches of Oats was primarily sweetened with honey based upon Post's use of the word "honey" and the related graphics appearing on the box."  Order, p. 10.

The Order also found that no reasonable consumer would believe that honey was one of the cereal's characterizing ingredients.[5]  Thus, the Consumer Survey asked the following question: "Based upon this packaging, what do you believe to be the main three ingredients of the cereal?"

---

[4] In their opposition to Post's motion to dismiss, Plaintiffs requested leave to further amend if the motion were granted "for a reason that has not previously been the subject of amendment." Plaintiffs' Opposition to Motion to Dismiss, p. 32.

[5] As the Order states (at p. 15): "the Court would still conclude that the Amended Complaint does not plausibly allege that the packaging was misleading in any particular.  The packaging referenced in the Amended Complaint makes no objective representation about the amount of honey, leaving the cereal's accurate list of ingredients as the only unambiguous representation of the amount of honey relative to other sweeteners."  And: "Although the Amended Complaint at least suggests that honey is among the recognizable flavors of Honey Bunches of Oats, that does not render honey a characterizing ingredient." Order, p. 17.

The result was that 79.5 % of respondents (288 consumers) believed, based on Post's packaging, that honey was one of the product's main three ingredients, contradicting the Court's conclusion.

Federal Rule of Civil Procedure 15(a) sets forth a liberal amendment policy, stating in no uncertain terms: "The Court should freely give leave [to amend] when justice so requires."  As the Supreme Court has emphasized, leave to amend "should, as the rules require, be 'freely given," and "this mandate is to be heeded." *Forman v. Davis,* 371 U.S. 178, 182 (1962).   The Consumer Survey data is clearly relevant to Plaintiffs' claims and amendment would not cause substantial prejudice to Post.  Thus, the Court should reconsider its denial of Plaintiffs' request for leave to amend and permit them to file an amended complaint that sets forth the survey results. *See Klunder v. Brown University,* 778 F. 3d 1, 34 – 35 (1st Cir. 2015).

## Conclusion

For the foregoing reasons, the Court should reconsider its August 13th Order and reinstate Plaintiffs' claims.  Alternatively, the Court should reconsider its denial of Plaintiffs' request to amend and grant them leave to file an amended complaint that sets forth the results of the Consumer Survey.

**Respectfully submitted:**

**ANITA S. LIMA**
**SUSAN WRUBLEWSKI, by:**

*/s/ Kenneth D. Quat*
Kenneth D. Quat
BBO#408640
**QUAT LAW OFFICES**
929 Worcester Rd.
Framingham Massachusetts 01701
(508) 872-1261
ken@quatlaw.com

        */s/Michael R. Reese*
        */s/Carlos F. Ramirez*
        **REESE LLP**
        100 West 93rd St., 16th Floor
        New York, New York 10025
        212-643-0500
        *mreese@reesellp.com*
        *cramirez@reesellp.com*

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 9, 2019.

        */s/ Kenneth D. Quat*